STATE OF NORTH CAROLINA v. VICTOR MANUEL MUNOZ A/K/A
VICTOR MANUEL MUNOZ-BEDOYA

No. COA99-1338

(Filed 16 January 2001)

**1. Search and Seizure— traffic stop—motion to suppress—reasonable suspicion**

The trial court's finding that an officer had a reasonable suspicion to detain defendant after a traffic stop of defendant's truck which was transporting two cars was supported by the evidence, because: (1) the issue was whether a reasonable officer would be suspicious based upon the information known to him and not whether those circumstances would raise the suspicions of someone knowledgeable about the trucking industry; and (2) a trooper testified at the voir dire hearing that given fuel prices and the dis-

tance traveled, the $200 flat fee amount per vehicle that defendant stated he was going to receive seemed suspicious.

**2. Search and Seizure— traffic stop—voir dire hearing—finding defendant cooperated with police not required**

The trial court did not err by denying defendant's motion to suppress the evidence of cocaine obtained in the search of defendant's truck and the two cars being transported on the truck even though defendant contends the trial court should have been required to make a finding at a voir dire hearing that defendant cooperated with the police when a trooper asked if he could search defendant's truck, because a judge does not have to make findings summarizing all of the evidence before him in a voir dire hearing.

**3. Search and Seizure— traffic stop—delay in detention—reasonable suspicion**

The trial court did not err by denying defendant's motion to suppress the evidence of cocaine obtained in the search of defendant's truck and the two cars being transported on the truck even though defendant contends it took only a few minutes to check defendant's driver's license and that neither officer was able to explain the reason for the forty-five-minute delay, because the court's findings describe actions the officers took during the forty-five-minute period to confirm their reasonable suspicion, including checking the license, the fuel stickers, the EPIC system to see if there were any previous violations, and defendant's log book.

**4. Search and Seizure— lawful detention—reasonable and articulable suspicion**

The trial court did not err by denying defendant's motion to suppress the evidence of cocaine obtained in the search of defendant's truck and the two cars being transported on the truck even though defendant contends the trial court's findings of fact do not support its conclusion of law that the officers had a reasonable suspicion to detain defendant, because applying the totality of circumstances test to the facts reveals that a reasonable cautious officer would have a reasonable and articulable suspicion that criminal activity was afoot when there were inconsistencies in defendant's log book and shipping documentation.

**5. Search and Seizure— automobile—voluntariness of consent to search**

The trial court did not err by concluding that the search of defendant's truck and the two cars being transported on the truck was not illegal after defendant's lawful detention, because: (1) two troopers testified that defendant said they could search his vehicle, and willingly signed the consent form; (2) defendant was not confined to the patrol car the entire time that the troopers were checking defendant's license, registration, and paperwork; (3) defendant did not attempt to refute the voluntariness of the consent on cross-examination, nor by presenting his own evidence; and (4) defendant voluntarily told the officers they could search his truck before they even asked.

**6. Drugs— trafficking in cocaine by possession—trafficking in cocaine by transportation—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charges of trafficking in cocaine by possession and trafficking in cocaine by transportation, because: (1) constructive possession can be inferred where the evidence shows that defendant had the power to control the vehicle where the controlled substance was discovered; (2) defendant could have found the cocaine had he inspected the vehicle in a manner consistent with the inspection he conducted on the other vehicle on his truck; (3) the fax indicated the vehicle was to be shipped to Junior City, New Jersey, which the State Bureau of Investigation testified does not exist, and the contact number was a New York area code; and (4) defendant told the agents he did not know the buyer and that the buyer would not be able to contact defendant directly, but a call was received on defendant's pager from the number identified on the fax as the buyer's number.

**7. Jury— motion to dismiss juror—juror submitted note to court inquiring about defendant—failure to undertake further investigation not error**

The trial court did not abuse its discretion by failing to undertake a further investigation and by denying defendant's motion to dismiss a juror after the juror submitted a note to the court inquiring as to whether defendant had a prior record, the length of time he had been in the United States, his nationality, and his citizenship status, because: (1) the trial court informed defendant and both counsel of the question, the response it intended to

make, and gave defendant's counsel an opportunity to state his position; (2) defendant did not request any further inquiry or investigation after his motion to dismiss the juror was denied; and (3) the trial court was in a better position to determine whether the juror's questions were potentially prejudicial, and whether the situation could be cured by an appropriate instruction.

**8. Drugs— trafficking in cocaine by possession—trafficking in cocaine by transportation—requested instruction improper**

The trial court did not err in a trafficking in cocaine case by refusing to give defendant's requested instruction to the jury that he was operating as a licensed common carrier who holds himself out to the public to transport persons or property for hire, that he is not required by law to inventory the contents of a package or vehicle that he has undertaken to transport for hire, and that it would be necessary to find that defendant had actual knowledge of the controlled substances, because: (1) whether a common carrier is required by law to inventory the contents of a package or vehicle is not relevant; (2) the issue regarding the lack of an inspection of the pertinent vehicle was whether defendant's failure to inspect was consistent with his actions with respect to the other vehicles, and not whether the inspection was required; and (3) defendant's instruction is inaccurate since possession can be actual or constructive, and a defendant's knowledge of the controlled substance may be inferred from other evidence in the case.

Appeal by defendant from judgments entered 11 October 1995 by Judge C. Preston Cornelius in Guilford County Superior Court. Heard in the Court of Appeals 11 October 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Douglas A. Johnston, for the State.*

*Polly D. Sizemore for defendant-appellant.*

MARTIN, Judge.

Defendant was convicted on 1 September 1995 of trafficking in cocaine by possession and trafficking in cocaine by transportation. He appeals from judgments imposing concurrent terms of imprisonment.

The State offered evidence tending to show that defendant was driving his tractor trailer truck with a car carrier north on I-85 on 31 December 1994, and was transporting a Ford Aerostar and a Nissan Sentra at the time. He was spotted by Sergeant L.E. Lowry of the North Carolina Highway Patrol, who determined that defendant was traveling in excess of seventy-five miles per hour. When Sergeant Lowry turned his vehicle around and caught up to defendant, defendant had already been pulled over by Trooper William Gray of the Highway Patrol. Trooper Gray stopped defendant because the tractor trailer was "drifting back and forth in its lane of travel and at times driving over the divided lines to the left," did not have its headlights on, and had only the driver's side windshield wiper in operation despite steady rain. Trooper Gray requested that defendant produce his license and registration. Defendant handed the trooper his license, his registration, a notebook containing his log book, and a clipboard holding shipping documents and bills of lading.

Defendant sat in the front seat of the patrol car while Trooper Gray checked his Texas driver's license. Shortly thereafter, Trooper Lowry joined defendant and Trooper Gray in the car. Despite defendant's strong accent, the troopers determined that he could understand them because he was answering their questions appropriately. Defendant stated that he was sleepy and that he forgot to turn his headlights back on after an earlier stop.

Upon inspection of the documents provided by defendant, the troopers found inconsistencies in defendant's log book and in the shipping documentation. The clipboard contained documents entitled "bill of lading" for the Aerostar and for other vehicles that were no longer on the carrier. The bills of lading included an inspection checklist done on the vehicles. There was no bill of lading for the Sentra. Defendant produced a FAX that listed the Sentra's destination as Junior City, New Jersey, a contact number, and Miguel Angel as the contact person; there was no other documentation regarding the Sentra. Defendant told the officers that he did not know Mr. Angel.

The troopers also noted that defendant smelled strongly of grease or fuel. Defendant told the troopers that he was receiving $200 per vehicle to transport the van to Delaware and the Sentra to New Jersey. Trooper Gray sent defendant back to his truck while checking the tags of the cars on the carrier and clipboard.

Defendant returned to the patrol vehicle and sat in the back seat while the checks were completed and the trooper received notice that

the license and registration were valid. Trooper Gray issued defendant a warning citation for driving out of his lanes and for operating a vehicle without headlights, and returned all of the documentation. About forty-five minutes elapsed between the time defendant was stopped until he was issued this citation.

As defendant was leaving the patrol car, Trooper Gray asked him whether there were any weapons or drugs in the truck. Defendant responded "no" to both questions. Trooper Gray then asked defendant if he could search the truck; defendant agreed and signed a consent form. Trooper Gray searched the Aerostar and found nothing. Trooper Gray noted the rear tags and the rear trunk lock mechanism were missing on the Sentra. He smelled the same grease or fuel-like odor he had detected on defendant in the interior of the car and noticed that the back seat on the passenger's side had been pulled out. He found two kilo bundles of cocaine behind the seat.

Sergeant Lowry handcuffed defendant and seated him in the back seat of the patrol car. When he was later asked to step out of the car, he was holding his beeper with the bottom off and the batteries removed. Trooper Gray took the beeper and replaced the batteries, but the memory had been cleared. The next day defendant's beeper went off; the number recorded on the beeper was the contact number listed on the FAX.

Agents from the State Bureau of Investigation questioned defendant. He stated that he did not inspect the Sentra because it was raining in Houston, Texas when he picked it up. Upon further investigation, however, the officers determined there had been no rain in the Houston area on the day defendant said he had picked up the car. In addition, the officers determined there is no such town as Junior City, New Jersey, and that the area code of the contact number shown on defendant's documentation was in New York City. A subsequent inspection of the Sentra revealed additional packages of cocaine hidden under the floor; the cocaine located in the car was estimated to have a "street value" of approximately ten million dollars.

Defendant offered evidence tending to show that he was an automobile transporter and was leased to Freight Shakers. Ruth Ontevaras testified that she is employed with AAA Auto Trucking in Las Vegas, Nevada, and that she received an order on 27 December 1994 from a person who identified himself as Miguel Angel of Houston, Texas, requesting that a 1989 Sentra be transported from Houston Auto Auction to himself at 1001 74th Street, Junior City, New

Jersey. He gave her a pager number as a contact number. Angel wired Ms. Ontevaras a partial payment, and she faxed the contract to defendant on 28 December and asked him if he could pick up the car. She also instructed him to call her when he got to Virginia or New Jersey for instructions as to how much to collect for the balance. There was also evidence tending to show that defendant was dependable and had a good reputation in the transport business. Finally, defendant's former employer testified a grease or fuel-like smell is consistent with an old truck such as the one owned by defendant.

I.

**[1]** Defendant first assigns error to the trial court's denial of his motion to suppress the evidence obtained in the search because he was unlawfully detained or, in the alternative, because the search was illegal. Defendant assigns error to both the court's findings of fact and conclusions of law made after a *voir dire* hearing.

A trial court's findings of fact made after a suppression hearing are conclusive and binding on the appellate courts if supported by competent evidence. *State v. Brooks*, 337 N.C. 132, 446 S.E.2d 579 (1994). Defendant argues the following finding of fact is not supported by competent evidence:

> That the officer had a suspicion once he talked with the defendant about the two used cars on a big rig coming from Houston, Texas going to Delaware, and the defendant had told him he was receiving $200 per car for the transportation. A reasonable officer would have a reasonable suspicion that the economics of the situation did not match the situation as he observed it.

Defendant argues that because neither officer was knowledgeable about the auto transport business, the circumstances were not such as to raise a reasonable suspicion, especially since there was evidence that an additional vehicle had been carried earlier in the trip. We disagree. At issue is whether a reasonable officer would be suspicious based upon the information known to him, not whether those circumstances would raise the suspicions of someone knowledgeable about the trucking industry. Trooper Gray testified at the *voir dire* hearing that given fuel prices and the distance traveled, the $200 flat fee amount per vehicle seemed suspicious; he also acknowledged that he knew a third vehicle had been transported. The trial court's finding is supported by competent evidence.

STATE v. MUNOZ

[141 N.C. App. 675 (2001)]

**[2]** Defendant also argues that the trial court should have included a finding that defendant cooperated with the police. "When conflicting evidence is offered at a *voir dire* hearing held to determine the admissibility of evidence, the trial judge must make findings of fact *to show the basis of his rulings on the admissibility of the evidence offered.*" *State v. Basden,* 8 N.C. App. 401, 407, 174 S.E.2d 613, 617 (1970) (emphasis added). A judge does not have to make findings summarizing all of the evidence before him in a *voir dire* hearing. *State v. Dunlap,* 298 N.C. 725, 259 S.E.2d 893 (1979). Therefore, we find no error in this omission.

**[3]** Defendant also contends the trial court should have found that it took only a few minutes to check his driver's license, and that neither officer was able to explain the reason for the forty-five minute delay. We note that the trial court found that "[Trooper Gray] did take a few minutes to check [the] out-of-state license", and that the court's findings also described actions taken by the officers during the 45 minute period; i.e., they checked the license, the fuel stickers, and the EPIC system to see if there were any previous violations, and also reviewed defendant's log books. These findings are sufficient to explain the time involved in the stop.

**[4]** Defendant next argues that the trial court's findings of fact do not support its conclusion of law that the officers had a reasonable suspicion to detain defendant. This assignment of error is reviewable *de novo. Brooks,* 337 N.C. at 141, 446 S.E.2d at 585. "In order to further detain a person after lawfully stopping him, an officer must have reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." *State v. McClendon,* 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999). In its analysis, the court must "view the facts 'through the eyes of a reasonable, cautious officer, guided by his experience and training' " at the time he determined to detain defendant. *State v. Parker,* 137 N.C. App. 590, 598, 530 S.E.2d 297, 302 (2000) (quoting *State v. Watkins,* 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)). The court may draw reasonable inferences from those facts, and should employ a totality of the circumstances test. *Id.* The law in North Carolina as to what constitutes a "reasonable and articulable suspicion" following traffic stops is evolving.

In *State v. Pearson,* 348 N.C. 272, 276, 498 S.E.2d 599, 601 (1998), a case dealing with a frisk, the Court held that there was insufficient evidence to show a reasonable and articulable suspicion that the defendant might be armed and dangerous where the officer noted: (1)

a slight odor of alcohol, (2) that the defendant acted nervous and excited, and (3) that the defendant and his passenger's statements as to their travel destinations were inconsistent. The Court additionally noted that the stop was in the middle of the afternoon, and that defendant was both polite and cooperative. *Id.* Following the Supreme Court's decision in *Pearson*, this Court held that there was not sufficient evidence to detain the defendant where the defendant was nervous and a passenger was uncertain as to the day the trip began. *State v. Falana*, 129 N.C. App. 813, 817, 501 S.E.2d 358, 360 (1998).

In *State v. McClendon*, 350 N.C. 630, 639, 517 S.E.2d 128, 134 (1999), on the other hand, the Court held that there was sufficient evidence where the defendant could not produce the registration for the car, provided inconsistent information as to whose vehicle he was driving and where the driver lived, gave vague travel information, and acted nervous. The Court clarified its holding in *Pearson*, noting that the nervousness of the defendant in that case "was not remarkable," while deeming McLendon's rapid breathing, fidgeting, perspiration, and lack of eye contact to be of a different nature. *Id.* Use of the totality of the circumstances test led to different results in the two cases. *Id.*

We now turn to the case before us. During the stop, the troopers noted: (1) that the log book was not properly filled out and there were discrepancies in it; (2) that defendant did not have a bill of lading or an inspection for the Sentra but did have one for the van and other cars he had previously transported; (3) that defendant smelled like grease, and (4) that the economics of traveling from Texas to Delaware and New Jersey for $200 per car seemed suspicious. Applying a totality of the circumstances test to the foregoing facts, we believe a "reasonable, cautious officer" would have a reasonable and articulable suspicion that criminal activity was afoot. The inconsistencies in the log book and in the shipping documentation make this case more like *McClendon* than *Pearson*. We, therefore, hold that the trial court's findings of fact support its legal conclusions, and that defendant was not unlawfully detained.

**[5]** Defendant next argues that the search was illegal. Since we have held that defendant's detention was not unlawful, the State was required to show only that defendant's consent to the search was freely given, and was not the product of coercion. *State v. Aubin*, 100 N.C. App. 628, 397 S.E.2d 653 (1990).

At the *voir dire* hearing, the State offered the testimony of the two troopers who stated that defendant said they could search his vehicle, and willingly signed the consent form. They further testified that defendant was not confined to the patrol car the entire time that they were checking defendant's license, registration and paperwork. Defendant did not attempt to refute the voluntariness of the consent on cross-examination nor by presenting his own evidence. In fact, on cross-examination of Trooper Gray, defendant's counsel asked:

> He voluntarily told you you could search his truck before you even asked to search his truck, did he not?

Shortly thereafter, counsel asked:

> And then after that, without you even asking him, he said you can search if you want to?

The trial court's finding that defendant's consent to the search was voluntary is supported by the evidence and supports the conclusion that the search of the truck was lawful. Defendant's motion to suppress was properly denied.

## II.

**[6]** Defendant next argues that the court erred in denying his motion to dismiss. In ruling on a motion to dismiss, the trial court must determine that the State presented substantial evidence as to every essential element of the crime. *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 66, 296 S.E.2d at 652 (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). "The trial court's function is to determine whether the evidence allows a 'reasonable inference' to be drawn as to the defendant's guilt of the crimes charged." *Id.* at 67, 296 S.E.2d at 652 (quoting *State v. Thomas*, 296 N.C. 236, 244-45, 250 S.E.2d 204, 209 (1978)). Any inference should be drawn in the light most favorable to the prosecution, and "contradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *Id.* at 67, 296 S.E.2d at 652 (citation omitted).

Both trafficking in cocaine by possession and trafficking in cocaine by transportation require proof that defendant knowingly committed the acts charged. Defendant contends there was insufficient evidence to show that he knowingly possessed and transported the cocaine. He argues the same grease-like odor on defendant and on

the cocaine is the sole evidence that defendant knew of the existence of the cocaine, and that such evidence was rebutted.

This Court has repeatedly stated that constructive possession can be inferred where the evidence shows that defendant had the power to control the vehicle where the controlled substance was discovered. *See e.g. State v. Hunter*, 107 N.C. App. 402, 420 S.E.2d 700 (1992), *overruled on other grounds* in *State v. Pipkins*, 337 N.C. 431, 446 S.E.2d 360 (1994); *State v. Dow*, 70 N.C. App. 82, 318 S.E.2d 883 (1984). This Court has further articulated that:

> [A] defendant's power to control the automobile where a controlled substance was found is enough to give rise to the inference of knowledge and possession sufficient to go to the jury.

*Hunter*, 107 N.C. App. at 409, 420 S.E.2d at 705.

An inference that defendant had knowledge of the presence of the cocaine can be drawn from defendant's power to control the Sentra. The Sentra had been under defendant's exclusive control since it was loaded onto the car carrier in Houston, Texas six days prior to defendant's arrest, and Trooper Gray testified that he had to obtain keys from defendant to unlock the cars to be able to search them. In addition, the State presented other evidence from which an inference of defendant's knowledge could be drawn. First, defendant presented the troopers with bills of lading for the Aerostar and the other vehicles which he had transported, but had no such document for the Sentra. Each bill of lading contained an inspection checklist. Defendant explained that he had no such inspection checklist for the Sentra because it was raining when he picked up the car in Houston, Texas; however, a certified copy of a report by the National Climatic Data Center was introduced into evidence showing that there was no precipitation in the Houston area on that date. Trooper Gray's testimony regarding the lack of rear tags, the absence of a trunk lock, the grease-like odor and the displacement of the rear seat indicates that defendant could have found the cocaine had he inspected the Sentra in a manner consistent with the inspection he conducted on the Aerostar. Second, the FAX indicated that the Sentra was to be shipped to Junior City, New Jersey and provided a contact number with an area code of 917. Agents from the State Bureau of Investigation testified that Junior City, New Jersey does not exist and that 917 is a New York City area code. Finally, defendant told the agents that he did not know Mr. Angel and that Mr. Angel would not be able to contact defendant directly; however, a call was received on defendant's pager

from the number identified as Mr. Angel's on the FAX. Taking the facts in the light most favorable to the State and leaving discrepancies and inconsistencies in the testimony for the jury to resolve, we conclude there was sufficient evidence from which it could be inferred that defendant had knowledge of the presence of the cocaine.

III.

[7] Defendant's next assignment of error arises from a note submitted to the court by one of the jurors, in which she inquired as to whether defendant had a prior record, the length of time he had been in the United States, his nationality, and his citizenship status. The note acknowledged "these questions may not be admissible." The trial court informed defendant and both counsel of the question, and the response it intended to make, and gave defendant's counsel an opportunity to state his position. Defendant's counsel moved to dismiss the juror. The trial court denied defendant's motion, concluding the questions "were appropriate for the juror of an inquiring mind." Defendant did not request any further inquiry or investigation. The trial court then instructed the juror, in the presence of the other jurors, as follows:

> In response to your questions, I would instruct you that you must restrict your consideration to the evidence that's presented here in the courtroom. You must not guess or speculate or conjecture [sic] as to what may or may not have been. And the attorneys have the right to present their case in the fashion they choose to present it. You must base your decision solely upon the evidence and law as presented here under oath in the courtroom and not something you might guess or surmise outside that. Some of the questions that you had would be inappropriate for the purpose of determining guilt or innocence. That would not be relevant to that determination. So, please remember and consider what you hear here in the courtroom under oath. The attorneys will make some of those things clear to you in their final arguments to you.

The standard of appellate review applicable to this assignment of error is abuse of discretion. *State v. Drake*, 31 N.C. App. 187, 229 S.E.2d 51 (1976). Defendant cites *Drake* in support of his argument that the court abused its discretion by not conducting an investigation of the witness prior to denying his motion. This Court said in *Drake* that "where instructions fail to prevent alleged [juror] misconduct, an investigation may be required." *Id.* at 191, 229 S.E.2d at 54. In *State v. Harrington*, 335 N.C. 105, 115, 436 S.E.2d 235, 240 (1993), the

Court clarified *Drake*, noting that an investigation is not "an absolute rule"; instead it is only required "where some prejudicial content is reported." Defendant contends that the juror questions indicate "potential bias" based on national origin.

We cannot say the trial court abused its discretion in this case by failing to undertake a further investigation or in denying defendant's motion to dismiss the juror. As this Court said in *Drake*,

> [t]he reason for the rule of discretion is apparent. Misconduct is determined by the facts and circumstances in each case. The trial judge is in a better position to investigate any allegations of misconduct, question witnesses and observe their demeanor, and make appropriate findings.

31 N.C. App. at 190, 229 S.E.2d at 54. In this case, the trial judge was in the better position to determine whether the juror's questions were potentially prejudicial, and whether the situation could be cured by an appropriate instruction. This assignment of error is overruled.

IV.

[8] Defendant next contends the trial court erred by refusing to instruct the jury as requested by defendant. Defendant requested the following jury instruction:

> The defendant was operating as a licensed common carrier. A licensed common carrier holds itself out to the public to transport persons or property for hire. A licensed common carrier is not required by the law to inventory the contents of a package or vehicle that he has undertaken to transport for hire. As a common carrier, the defendant was in constructive possession of the automobiles that he had undertaken to transport for hire. He was not, however, in constructive possession of the contents of any such vehicle. In order for you to find the defendant guilty of the offenses of trafficking by possessing and trafficking by transportation of controlled substances, it would be necessary for you to find beyond a reasonable doubt that the defendant had actual knowledge of the controlled substances as alleged in the indictment.

Instead, the trial court gave the following instruction:

> I will instruct you that the defendant was operating as a licensed common carrier. A licensed common carrier holds himself out to the public to transport persons or property for hire.

"If a request is made for a jury instruction which is correct in itself and supported by evidence, the trial court must give the instruction at least in substance" and failure to do so constitutes reversible error. *State v. Harvell*, 334 N.C. 356, 364, 432 S.E.2d 125, 129 (1993). However, if the requested instruction is not a correct statement of the law, the trial court can properly refuse to give it. *Pasour v. Pierce*, 76 N.C. App. 364, 370, 333 S.E.2d 314, 319 (1985), *disc. review denied*, 315 N.C. 589, 341 S.E.2d 28 (1986).

We find no error in the trial court's refusal to give the requested instruction. Whether a common carrier is required by law to inventory the contents of a package or vehicle is not relevant; the issue regarding the lack of an inspection of the Sentra was whether defendant's failure to inspect was consistent with his actions with respect to the other vehicles, not whether such inspection was required. Moreover, the instruction is inaccurate; as previously stated, possession can be actual or constructive and a defendant's knowledge of the controlled substance may be inferred from other evidence in the case. *Dow*, 70 N.C. App. at 85, 318 S.E.2d at 885-86. This assignment of error is overruled.

No error.

Judges GREENE and EDMUNDS concur.

Judge EDMUNDS concurred in this opinion prior to 31 December 2000.