STATE OF NORTH CAROLINA v. CARLTON LAMONT CRENSHAW

No. COA00-440

(Filed 3 July 2001)

**1. Search and Seizure— traffic stop—cocaine—motion to suppress evidence**

The trial court did not err in a possession with intent to sell or deliver cocaine case under N.C.G.S. § 90-95(a)(1) by denying defendant's motion to suppress evidence seized during a traffic stop of his vehicle, because: (1) defendant's illegal parking in an

**STATE v. CRENSHAW**

[144 N.C. App. 574 (2001)]

area known for drug activity along with the inoperable taillight on his vehicle afforded the officers reasonable grounds to believe that criminal activity may be afoot, thus justifying a brief detention; (2) the duration of defendant's detention beyond his initial stop was not unreasonable; and (3) defendant failed to present evidence refuting the voluntariness of his consent to a search of his vehicle.

2. **Constitutional Law— double jeopardy—possession with intent to sell or deliver cocaine—drug taxation**

The trial court did not err by denying defendant's motion to dismiss the charge of possession with intent to sell or deliver cocaine when it required defendant to pay taxes on the drugs seized from him under N.C.G.S. §§ 105-113.105 through 105-113.113, because North Carolina's drug tax does not violate the double jeopardy clause.

3. **Drugs— possession with intent to sell cocaine—lesser included offense of possession of cocaine—reinstruction to jury**

The trial court did not commit plain error by its reinstruction to the jury to correct the verdict and to indicate the correction on the verdict sheet after the jury initially convicted defendant of both possession with intent to sell cocaine and the lesser included offense of possession of cocaine.

Appeal by defendant from judgment entered 6 October 1999 by Judge Charles C. Lamm, Jr. in Buncombe County Superior Court. Heard in the Court of Appeals 28 March 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Newton G. Pritchett, Jr., for the State.*

*Rudolf Maher Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

WALKER, Judge.

On 6 October 1999, defendant was convicted of possession with intent to sell or deliver cocaine pursuant to N.C. Gen. Stat. § 90-95(a)(1) (1999). The trial court found defendant had a prior record level of IV and sentenced him to a minimum of nine months and a maximum of eleven months.

The State's evidence tends to show the following: On 6 November 1997 at approximately 9:00 a.m., Officer Timothy Splain (Splain) of the Asheville Police Department (department) was patrolling an area known for drug activity on South Market Street in Asheville, North Carolina. Splain noticed defendant sitting in the driver's seat of a vehicle parked in an area marked with a "No Trespassing" sign. Upon deciding to check defendant's vehicle and its occupants, Splain contacted Officer Joseph Palmer (Palmer) of the department's vice division for assistance. Splain then drove down Market Street, at which time defendant's vehicle left the parking lot and traveled behind Splain's vehicle.

Palmer arrived in the area, spotted defendant's vehicle and noticed one of its taillights was inoperable. Palmer then stopped defendant's vehicle and informed defendant he had been illegally parked and that his taillight was inoperable. Palmer asked for defendant's driver's license and registration just as Splain arrived on the scene. Defendant's driver's license and registration proved to be valid and Palmer and Splain were familiar with defendant's name. Palmer next asked defendant to exit his vehicle, at which time he frisked defendant "to make sure there were no weapons" and found a pager on him. Officer Darryl Fisher (Fisher), who was familiar with defendant's prior conviction of possession of a firearm by a felon, arrived and searched defendant's vehicle. The search revealed a screwdriver, a utility knife near the console and a small, black container in the glove compartment which held weight scales and cocaine. A further search of defendant's person at the detention center revealed additional cocaine hidden in his sweatshirt.

[1] In his first assignment of error, defendant contends the trial court committed reversible error by denying his motion to suppress evidence seized during the traffic stop. Defendant argues the search and seizure violated his state and federal constitutional rights because, under a totality of the circumstances, the officers detained him longer than necessary to issue a citation. Defendant further contends his consent to search his vehicle was not freely and voluntarily given. U.S. Const. amend. IV; N.C. Const. art. I, § 20.

We first note a "trial court's findings of fact following a suppression hearing concerning the search of [a] defendant's vehicle are conclusive and binding on the appellate courts when supported by competent evidence." *State v. Brooks*, 337 N.C. 132, 140, 446 S.E.2d 579, 585 (1994). However, whether a trial court's findings support its conclusions that an officer had reasonable suspicion to detain a defend-

STATE v. CRENSHAW

[144 N.C. App. 574 (2001)]

ant is reviewable *de novo. State v. Munoz*, 141 N.C. App. 675, 541 S.E.2d 218, 222, *cert. denied*, 353 N.C. 454, 548 S.E.2d 534 (2001), *citing Brooks*, 337 N.C. at 141, 446 S.E.2d at 585.

A law enforcement officer may make a brief investigative stop, known as a *Terry* stop, of a vehicle if he is led to do so by specific, articulable facts giving rise to a reasonable suspicion of illegal activity. *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994); *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906 (1968). The test implemented by the United States Supreme Court for constitutional searches and seizures pursuant to a *Terry* stop was summarized by our Supreme Court in *State v. Peck*, 305 N.C. 734, 741, 291 S.E.2d 637, 641 (1982), where it stated:

> . . . if the totality of circumstances affords an officer reasonable grounds to believe that criminal activity may be afoot, he may temporarily *detain* the suspect. If, after the detention, his personal observations confirm his apprehension that criminal activity may be afoot and indicate that the person may be armed, he may then *frisk* him as a matter of self-protection.

*Id.* (emphasis added); *State v. Sreeter*, 283 N.C. 203, 209-10, 195 S.E.2d 502, 506-07 (1973). In addition, a court must objectively " 'view the facts 'through the eyes of a reasonable, cautious officer, guided by his experience and training' at the time he determined to detain defendant.' " *Munoz*, 141 N.C. App. at 682, 541 S.E.2d at 222, *quoting State v. Parker*, 137 N.C. App. 590, 598, 530 S.E.2d 297, 302 (2000). *See also State v. McClendon*, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999). As noted by another jurisdiction, " '[i]ndividually, any of the factors cited [in a *Terry* case] might not justify a search, but one cannot piecemeal this analysis. One piece of sand may not make a beach, but courts will not be made to look at each grain in isolation and conclude there is no seashore.' " Robert G. Lindauer, Jr., *State v. Pearson and State v. McClendon: Determining Reasonable, Articulable Suspicion from the Totality of the Circumstances in North Carolina*, 78 N.C. L. Rev. 831, 849 (2000), *quoting Commonwealth v. Shelly*, 703 A.2d 499, 503 (Pa. Super Ct. 1997).

Regarding the stop, search and seizure in the *instant case*, the trial court found "[t]hat when [Fisher] searched the glove container and opened [the small, black container therein], that he was searching in a place that was large enough to have contained some type of weapon, especially some type of bladed weapon." Based upon this finding, the Court concluded:

[1)] That based upon [Palmer's] observation of [defendant's] vehicle's rear lights and the information that he had received from [Splain], [Palmer] had probable cause and a reasonable and articulable suspicion to stop the defendant's vehicle to investigate possible improper equipment and to investigate trespassing. 2) Even though [Fisher] told the defendant that he was going to search the defendant's vehicle for weapons and may have told defendant—and the defendant may have been told by the officer that he had a right to do so, the defendant, nevertheless, voluntarily consented to this search of his vehicle, there being no evidence that he was threatened, or deceived in any manner, or that he was promised anything. 3) That none of the constitutional rights, either federal or state, of the defendant were violated by the stopping and searching of the defendant's vehicle or by the search of the defendant's person at the jail prior to his being incarcerated.

We first determine whether defendant's initial detention was a lawful *Terry* stop. The totality of circumstances surrounding the stop of defendant's vehicle supports the trial court's conclusions. Defendant's illegal parking in an area known for drug activity along with the inoperable taillight on his vehicle, afforded the officers reasonable grounds to believe that criminal activity may be afoot, thus justifying a brief detention.

We next determine whether the duration of defendant's stop was reasonable. Defendant contends the duration was invalid because it was longer than necessary to issue a citation by virtue of the following: (1) during the stop, defendant's driver's license and registration proved to be valid; (2) defendant was not charged with trespassing nor for improper equipment; (3) no evidence was introduced at trial to show defendant's taillight was inoperable nor that defendant was aware he had been illegally parked; and (4) a frisk of defendant's person revealed no weapon or contraband on him.

In *State v. Butler*, 331 N.C. 227, 415 S.E.2d 719 (1992), our Supreme Court upheld a prolonged detention of a defendant to frisk for any weapons under a totality of the circumstances analysis. Defendant was on a corner specifically known for drug activity, was a stranger to the officer and attempted to move away from the officer after making eye contact with him. *Id.* at 232-34, 415 S.E.2d at 721-22. In addition, it was the officer's experience that people involved in drug traffic are often armed. *Id.* Although the Court

acknowledged the United States Supreme Court's mandate that "mere presence in a neighborhood frequented by drug users is not, standing alone, a basis for concluding that the defendant was himself engaged in criminal activity[,]" the additional circumstances were found to justify a *Terry* stop and frisk. *Id.* at 233-35, 415 S.E.2d at 722-23.

Likewise, in the instant case, the officers determined that to ensure their safety, it was necessary to ask defendant to step outside his vehicle so they could frisk him. This was based upon the officers' familiarity with defendant, defendant's presence in a specific area known for drug activity, and his having been illegally parked. Thus, the duration of defendant's detention beyond his initial stop was not unreasonable.

We next determine whether defendant's constitutional rights were violated on the basis that his consent to search his vehicle was not freely and voluntarily given. Defendant contends his mere acquiescence to Fisher's statement that he was going to search defendant's vehicle does not amount to clear and unequivocal consent.

When "the State seeks to rely upon [a] defendant's consent to support the validity of a search, it has the burden of proving that the consent was voluntary." *State v. Morocco*, 99 N.C. App. 421, 429, 393 S.E.2d 545, 549-50 (1990), *citing State v. Hunt*, 37 N.C. App. 315, 321, 246 S.E.2d 159, 163 (1978); *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854 (1973). When defendant's detention is lawful, the State need only show "that defendant's consent to the search was freely given, and was not the product of coercion." *Munoz*, 141 N.C. at 683, 541 S.E.2d at 223.

Defendant relies on *State v. Pearson*, 348 N.C. 272, 498 S.E.2d 599 (1998), where our Supreme Court held "[t]here must be a clear and unequivocal consent before a defendant can waive his constitutional rights." *Id.* at 277, 498 S.E.2d at 601, *citing State v. Little*, 270 N.C. 234, 239, 154 S.E.2d 61, 65 (1967). In that case, the Court concluded defendant's acquiescence upon being informed by an officer that he would be frisked was not consent "considering all the circumstances." *Id.* However, the facts in *Pearson* differ from the facts of this case. In *Pearson*, the officers had defendant's written consent to search his vehicle. *Id.* at 274, 277, 498 S.E.2d at 600, 601. The officers also searched defendant's person without objection. *Id.* at 277, 498 S.E.2d at 601. The Court found the search of defendant's person to be error, as the written consent applied only to the vehicle. *Id.*

This Court addressed the voluntariness of consent to search a vehicle in *Munoz*, 141 N.C. App. 675, 541 S.E.2d 218. In that case, the State offered testimony of two troopers that defendant verbally consented to a search of his vehicle and signed a consent form. *Id.* at 684, 541 S.E.2d at 221. On appeal, defendant contended the search was unlawful. In addressing whether defendant's consent to the search was freely given or was the product of coercion, this Court found "[d]efendant did not attempt to refute the voluntariness of the consent on cross-examination nor by presenting his own evidence." Id. at 684, 541 S.E.2d at 223. We thus held that the search of defendant's vehicle was lawful, since the evidence supported the trial court's finding that the consent was voluntary. *Id.*

Here, Splain, Palmer and Fisher each testified that defendant verbally consented by answering "okay" when Fisher stated he wanted to search defendant's vehicle. Defendant did not produce any evidence to refute the voluntariness of his consent. In response to defendant's motion to suppress evidence, the trial court concluded that defendant voluntarily consented to the search of his vehicle and that no evidence to the contrary had been presented.

We agree with the trial court that the evidence supports a finding that defendant voluntarily consented to the search of his vehicle. The search was therefore lawful and this assignment of error is overruled.

[2] In his next assignment of error, defendant contends the trial court erred by denying his motion to dismiss the charge of possession with intent to sell or deliver cocaine by requiring him to pay taxes on the drugs seized from him pursuant to the North Carolina Unauthorized Substances Taxes in N.C. Gen. Stat. § § 105-113.105 through 105.113.113 (1997). Defendant contends that his being prosecuted for this charge, in addition to paying such tax, amounts to double jeopardy in violation of his constitutional rights.

In support of his argument, defendant relies on a decision by the Fourth Circuit Court of Appeals in *Lynn v. West*, 134 F.3d 582 (4th Cir.), *cert. denied*, 525 U.S. 813, 142 L. Ed. 2d 36 (1998). However, our Courts have stated on several occasions that the holding in *Lynn* is not binding on our State courts. *See State v. Adams*, 132 N.C. App. 819, 513 S.E.2d 588, *disc. review* denied, 350 N.C. 836, 538 S.E.2d 570, *cert. denied*, 528 U.S. 1022, 145 L. Ed. 2d 414 (1999) (stating this Court cannot declare the drug tax unconstitutional absent such a ruling by our Supreme Court, the United States Supreme Court, or leg-

islation by the General Assembly); State *v. Ballenger,* 345 N.C. 626, 481 S.E.2d 84, *cert. denied,* 522 U.S. 817, 139 L. Ed. 2d 29 (1997) (affirming this Court's holding "that the North Carolina Controlled Substance Tax does not have such fundamentally punitive character-istics as to render it violative of the prohibition against multiple pun-ishments for the same offense contained in the [d]ouble [j]eopardy [c]lause"); *State v. Creason,* 346 N.C. 165, 484 S.E.2d 525 (1997) (affirming this Court's holding that North Carolina's drug tax does not violate the double jeopardy clause). Accordingly, this assignment of error is overruled.

[3] In his last assignment of error, defendant contends the trial court committed plain error after the jury initially convicted defendant of both possession of cocaine with intent to sell and the lesser included offense of possession of cocaine. When presented with this initial verdict sheet out of the presence of the jury, the trial court informed counsel that he would give the jury another verdict sheet and "re[-]instruct them [sic] that they are to unanimously decide on only one of the three charges." Defendant contends the trial court should have re-instructed the jury on the differing elements of the two crimes, although defendant did not request such an instruction at trial.

The trial court re-instructed the jury as follows:

> . . . you marked two of the possible three verdicts. Let me instruct you that you are only to arrive at one of the possible three ver-dicts: either guilty of possession with intent to sell and deliver cocaine or guilty of possession of cocaine or not guilty. Only one of those three possibilities is to be found by the jury . . . . Does everyone understand that? Anybody have any questions about that? (No hands were raised.) . . .

In addition, the trial court polled the jury after the final verdict, at which time the jury unanimously agreed with and consented to the verdict.

Because defendant failed to object to the jury instructions before the jury retired to deliberate, he is only entitled to relief if he can show that the instructions complained of constitute "plain error." *State v. Cummings,* 326 N.C. 298, 389 S.E.2d 66 (1990). "Plain error" exists where defendant can show that absent the error, a different result at trial would have been reached. *State v. Cummings,* 352 N.C. 600, 536 S.E.2d 36 (2000), *cert. denied,* —— U.S. ——, 149 L. Ed. 2d 641

(Apr. 23 2001) (No. 00-8618) (citations omitted). We fail to see how defendant was prejudiced by the trial court's re-instructing the jury to correct the verdict and to indicate the correction on the verdict sheet.

In sum, defendant received a fair trial free of prejudicial error.

No error.

Judges HUNTER and TYSON concur.