STATE OF NORTH CAROLINA
v.
TIMOTHY LIVINGSTON COX
No. COA08-381
North Carolina Court of Appeals.
Filed November 18, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State
Michael E. Casterline for defendant-appellant.
BRYANT, Judge.
Defendant Timothy Cox was convicted of five counts of statutory sex offense, four counts of first-degree sex offense, and one count of disseminating obscene materials to a minor under the age of sixteen. On appeal, defendant argues that the trial court erred when it denied his motion to suppress items seized during a search of his home. For the reasons set out herein, we disagree.
A grand jury returned indictments against defendant on 27 March 2006 and 2 January 2007 on three counts of statutory sex offense; two counts of statutory sex offense of a person who is thirteen, fourteen, or fifteen years old; one count of disseminating obscenity to a minor under sixteen; one count of disseminating obscenity to a minor under thirteen; and four counts of first degree statutory sexual offense. On 22 August 2007, defendant filed a pretrial motion to suppress items seized by the Cherokee County Sheriff's Department from defendant's residence. In the motion, defendant asserted that he was arrested without probable cause and that he was not advised of his Miranda rights before police searched his residence. In the attached affidavit, defendant alleged that officers threatened to tear apart his mother's trailer if he did not admit to living a secret, homosexual lifestyle.
The trial court held a suppression hearing on 28 August 2007. At the hearing, Detective Dwayne Anders and Deputy Joe Wood of the Cherokee County Sheriff's Department testified for the State. Detective Anders testified that on 30 January 2006, he obtained an arrest warrant for defendant based on allegations by "M.M." that defendant sexually molested him. That night, Det. Anders, Det. Joe Wood, and Deputy Todd White went to the single-wide trailer defendant shared with his mother and his niece. Defendant's mother answered the door and directed the officers to defendant's bedroom.
Det. Anders testified that he arrested defendant in defendant's bedroom and informed him of his Miranda rights. Det. Anders did not provide defendant with a written copy of his Miranda rights. But, Det. Anders testified that defendant stated he understood his rights. Det. Anders then asked for permission to search defendant's room for pornography. Defendant admitted that he kept pornography but denied having any child pornography. Defendant gave the officers permission to search his bedroom. Det. Anders described the bedroom as "pretty close quarters": a ten-by-ten room, with a full or queen size bed, a dresser, and Rubbermaid tubs. The officers only searched defendant's bedroom.
In defendant's bedroom, the officers found envelopes that contained papers with video names and magazine titles. And, in a closet about three feet from defendant's bed, officers found a plastic tub full of pornography, including magazines, sales booklets, videos, and books. The officers seized these items and transported defendant to the Cherokee County Jail.
Once at the jail, Det. Anders testified that he placed defendant in an office and once again read defendant his Miranda rights. Det. Anders then started a dialogue with defendant but did not present defendant with a written waiver of rights. Det. Anders informed defendant of the allegations and asked defendant about the material the officers found in defendant's bedroom, "straight pornographic material and homosexual pornographic material." "Due to the nature of that, [Det. Anders] asked [defendant] of a sexual preference that he had. Was he what we would consider straight or was he homosexual?" Det. Anders testified that defendant responded that "he likes both men and women, but more recently he had become more interested in homosexuality." Defendant confirmed that the pornography material belonged to him. Defendant also admitted that he "French-kissed" M.M. Defendant told the officers, "Something did happen, but not the way you said." Defendant repeated that statement several times in response to Det. Anders' questions. Defendant also testified at a suppression hearing for the articles seized from defendant's bedroom. Defendant testified that when the officers arrived to arrest him, he was asleep and had been experiencing stomach pain that day. Defendant testified that at the jail, after the officers informed him of the allegations, he asked for an attorney. When asked who he told, defendant responded, "It was [Deputy] Joe Woods, `cause [Det.] Dwayne [Anders] was out of the room." When asked if he consented to a search of his home, defendant testified, "Not really." Defendant testified that one of the officers threatened to "tear the trailer apart." However, defendant could not identify which officer made the threat.
At the conclusion of the hearing, the trial court denied defendant's motion to suppress in an oral order entered in open court. The trial court found that defendant consented to the search and concluded that the materials seized by the sheriff's department from defendant's bedroom were admissible both because they were seized incident to arrest and because defendant consented to the search.
At trial, the evidence tended to show that M.M. was defendant's nephew. And, at the time of trial, M.M. was fourteen. M.M.'s mother worked during the day and went to school at night, so M.M. and his brothers often stayed with their grandmother, defendant's mother.
On 30 January 2006, M.M.'s mother found that her hairbrush had fecal matter on it. At trial, M.M. testified that defendant hadinserted the hairbrush into M.M.'s anus. M.M. testified that defendant had shown him movies and magazines that depicted men performing sex acts with each other. One picture depicted a man sticking a hairbrush in another man's anus. M.M. also testified that defendant had also inserted his finger and his penis into M.M.'s anus on several occasions. When M.M.'s mother confronted him about the fecal matter on the hairbrush, M.M. told her about defendant's conduct . M.M.'s mother then took M.M. to the Cherokee County Sheriff's Department.
At trial, M.M. testified that defendant had been abusing him since he was eleven years old. M.M. testified that the abuse took place in the trailer where defendant lived and in a nearby wooded area. And, when in the trailer, the abuse took place in a room with boxes full of pornography. M.M. was afraid to tell anyone about the abuse .
During Detective Anders' trial testimony, the State introduced items seized from defendant's room: an adult video and material order magazine titled "Coming Attractions"; an order form for either video or printed material for "Odyssey Men"; an order form made out to defendant for free DVD's from gay.com; a hardback cover book titled Young Companions containing pornographic materials involving younger male models; a pornographic homosexual video titled "Just 18, Sex Drive, Part 1, Fresh, Frisky and Just 18"; another pornographic video titled "Barely Legal"; a book titled "Strapped for Cash" which includes a page headed "Toward a Perspective for Boy Lovers"; and a homosexual pornographic magazinetitled "Spank Me, 20 Reasons to go to Greece" and "Freshmen." Defendant renewed his objection based on his prior motion to suppress. The trial court overruled the objection.
Defendant did not testify at trial, but did put on evidence through several witnesses. At the close of the State's evidence and again after the presentation of all evidence, defendant made a motion to dismiss the charges. The trial court dismissed one charge of disseminating obscene materials to a child under the age of thirteen, but denied the motions as to the other charges. The jury found defendant guilty of five counts of statutory sex offense with a thirteen year old, four counts of first-degree sex offense, and one count of disseminating obscene material to a minor under sixteen years old. Defendant was sentenced to 240 to 297 months to be followed by two concurrent terms of 240 to 297 months.
In his sole argument on appeal, defendant contends that the trial court erred when it denied his motion to suppress the items seized from his home because he did not give consent to the search and because the search was not conducted incident to arrest. We disagree.
"[O]ur review of a denial of a motion to suppress is limited to determining whether the trial court's findings of facts [sic] are supported by competent evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law are legally correct." State v. Williams, 145 N.C. App. 472, 474, 552 S.E.2d 174, 175 (2001) (citation omitted). "If supported by competent evidence, the trial court's findings of fact areconclusive on appeal." State v. Braxton, 344 N.C. 702, 709, 477 S.E.2d 172, 176 (1996). However, where a defendant has not assigned error to the findings of fact, "the findings of fact are not reviewable, and the only issue before us is whether the conclusions of law are supported by the findings. . . ." State v. Campbell, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005) (citation omitted).
"When the State seeks to rely upon a defendant's consent to support the validity of a search, it has the burden of proving that the consent was voluntary." State v. Crenshaw, 144 N.C. App. 574, 579, 551 S.E.2d 147, 151 (2001) (citations omitted). "[T]he question whether a consent to a search was in fact `voluntary' or was the product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality of all the circumstances." State v. Brown, 306 N.C. 151, 170, 293 S.E.2d 569, 582 (1982) (citations and quotations omitted).
The evidence presented during the suppression hearing tended to show that defendant woke up in his bedroom to the presence of three officers from the Cherokee County Sheriff's Department. Det. Anders arrested defendant, and read defendant his Miranda rights. Defendant verbally indicated that he understood his rights. Det. Anders then asked defendant for consent to search defendant's room for pornography. Defendant admitted to Det. Anders that he kept pornography, but denied having any child pornography. Det. Anders also testified that defendant gave the officers consent to search his bedroom. Moreover, Det. Anders described the bedroom as"pretty close quarters": a ten-by-ten room, with a full or queen size bed, a dresser, and Rubbermaid tubs.
In defendant's bedroom, the officers found envelopes that contained papers with video names and magazine titles. In a closet about three feet from defendant's bed, officers found a plastic tub full of pornography, including magazines, sales booklets, videos, and books. The officers seized these items and transported defendant to the Cherokee County Jail.
Defendant's testimony during the motion to suppress hearing also indicates that he did not ask for counsel when the officers took him into custody and that he consented to the search of his room. However, defendant testified that one of the officers threatened to "tear the trailer apart." Yet, despite knowing two of the three officers by name, defendant could not identify which officer made the threat.
At the conclusion of the hearing, the trial court found that defendant consented to the search and concluded that the materials seized by the sheriff's department from defendant's bedroom were admissible both because they were seized incident to arrest and because defendant consented to the search.
We hold, based on the totality of the circumstances, the trial court's finding that defendant consented to the search is supported by competent evidence. Moreover, we hold this finding supports the trial court's conclusion that the items seized were admissible at trial because they were seized pursuant to defendant's consent to search his room. Because we find that the search was valid basedon defendant's consent, we need not address defendant's contention that the search was not incident to an arrest. As a result, we find no error.
No error.
Judges TYSON and ARROWOOD concur.
Report per Rule 30(e).