STATE OF NORTH CAROLINA v. PAUL DENNIS McCLENDON, JR.

No. 392A98

(Filed 23 July 1999)

## 1. Search and Seizure— traffic stop—probable cause—objective standard

For situations arising under the North Carolina Constitution, an objective rather than subjective standard must be applied to determine the reasonableness of police action related to probable cause. The reasoning of *Whren v. United States*, 517 U.S. 806, is compelling and is adopted. Whren conclusively establishes that the inquiry is no longer what a reasonable officer would do but what a reasonable officer could do and puts an end to issues involving whether the existence of probable cause for a traffic stop has been used as a pretext for stopping defendant for other reasons.

STATE v. McCLENDON

[350 N.C. 630 (1999)]

**2. Search and Seizure— traffic stop—probable cause—pretext**

Officers were justified in stopping defendant's vehicle in what became a narcotics prosecution where defendant's vehicle and another vehicle were exceeding the posted speed limit and defendant's vehicle was following too closely. Although defendant contended that the stated purpose of a speeding violation was a mere pretext for investigating him for possession of illegal drugs, the officer's subjective motive for the stop is immaterial.

**3. Search and Seizure— traffic stop—detention beyond warning ticket—reasonable suspicion**

In a prosecution for possession of marijuana, the detention of defendant from the time a warning ticket was issued until the time a canine unit arrived was reasonable under the totality of the circumstances in that defendant first said that his girlfriend owned the car but would not give her name; he eventually said that his girlfriend "Anna" owned the car; when the trooper inquired "Anna?" defendant said "I think so"; Anna was not the name listed on the title as the owner of the car; the address of the owner listed on the title and the address on defendant's license were the same; and defendant was extremely nervous. Language in *State v. Pearson*, 348 N.C. 272, regarding nervousness was not meant to imply that nervousness can never be significant in determining whether an officer could form a reasonable suspicion that criminal activity is afoot. Nervousness must be taken in light of the totality of circumstances and is an appropriate factor to consider when determining whether a basis for a reasonable suspicion exists. In this case, defendant exhibited more than ordinary nervousness.

**4. Search and Seizure— traffic stop—detention beyond initial investigation—reasonable duration**

In a marijuana prosecution, the detention of defendant for fifteen to twenty minutes between the issuance of a warning ticket and the arrival of a canine unit was reasonable. The officers acted quickly and diligently to obtain the canine unit and promptly put the drug detection dog to work upon its arrival.

Appeal of right pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 130 N.C. App. 368, 502 S.E.2d 902 (1998), affirming a judgment entered 14 October 1996 by

Ross, J., in Superior Court, Guilford County, upon defendant's plea of guilty pursuant to a plea agreement in which defendant reserved his right to appeal the denial of a motion to suppress evidence. On 30 December 1998, the Supreme Court granted discretionary review of additional issues. Heard in the Supreme Court 14 April 1999.

*Michael F. Easley, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State.*

*Locke T. Clifford and Walter L. Jones for defendant-appellant.*

*Mebane Rash Whitman on behalf of the American Civil Liberties Union of North Carolina Legal Foundation, amicus curiae.*

MITCHELL, Chief Justice.

In June and July 1996, defendant was indicted for trafficking in marijuana by transporting more than fifty pounds but less than one hundred pounds, trafficking in marijuana by possession of more than fifty pounds but less than one hundred pounds, and conspiracy to traffic in a controlled substance by possession and transportation. Defendant moved to suppress evidence found as a result of a search of his vehicle. The trial court denied defendant's motion to suppress. Defendant subsequently pled guilty to all of the charges pursuant to a plea agreement in which he reserved the right to appeal the denial of his motion to suppress. All of the charges were consolidated for judgment, and the trial court sentenced defendant to a term of twenty-five to thirty-five months' imprisonment and imposed a fine of $15,000. The Court of Appeals, with one judge dissenting, affirmed the trial court. Defendant appealed to this Court as a matter of right based on the dissent below. On 30 December 1998, we also allowed his petition for discretionary review of additional issues.

The testimony before the trial court at the suppression hearing tended to show the following: On 21 February 1996, Sergeant T.L. Cardwell of the North Carolina Highway Patrol was on duty patrolling Interstate 85 in Greensboro. He noticed two cars traveling at a speed of seventy-two miles per hour, seven miles over the posted speed limit. One vehicle was a minivan. Following closely behind it was a station wagon driven by defendant. Sergeant Cardwell drove his car alongside the station wagon and made eye contact with defendant, who decreased his speed. Sergeant Cardwell did the same thing with the driver of the minivan, but that driver did not slow

down. Sergeant Cardwell then radioed for assistance, and Trooper Brian Lisenby responded. The officers stopped both vehicles. At the suppression hearing, Sergeant Cardwell gave three reasons for stopping the vehicles: (1) they were in violation of the posted speed limit; (2) defendant was following the minivan too closely; and (3) Sergeant Cardwell had formed the opinion that the lead vehicle was a decoy vehicle intended to distract police attention from the second vehicle, the station wagon driven by defendant.

Sergeant Cardwell questioned the driver of the minivan, Tony Contreras, who had a Texas driver's license and said that the minivan belonged to his brother. Contreras said he was meeting his brother at the Greensboro airport so that they could visit some area furniture stores in search of supplies for the furniture store they planned to open in Texas. Contreras could not name any of the stores that they were supposed to visit, nor did he have an explanation for why he drove to North Carolina while his brother took a flight. He denied traveling with defendant. Sergeant Cardwell issued a warning ticket charging Contreras with speeding and then searched the vehicle after Contreras signed a consent form.

At the same time, Trooper Lisenby was busy questioning defendant. Lisenby testified that defendant appeared nervous, did not make eye contact, and was breathing heavily. Defendant produced his Tennessee driver's license and the title to the station wagon, but he did not have the registration for the vehicle. Defendant said that his girlfriend owned the car, but he could not give Trooper Lisenby her name even though the address on defendant's driver's license and the address on the title to the station wagon were the same. Defendant also denied knowing or traveling with the driver of the minivan.

At this point, Trooper Lisenby told defendant to get into his patrol car, where the questioning continued. Defendant explained that he had come from Georgia and was on his way to Greensboro. Trooper Lisenby testified that as defendant answered the questions, his nervousness increased. Defendant was "fidgety," evasive with his answers, and appeared very uncomfortable. When questioned again about the name on the car's registration and his girlfriend's name, defendant mumbled something, which Trooper Lisenby thought sounded like "Anna." Although the name Anna did not appear on the title to the station wagon, a radio check by Lisenby revealed no problems with the registration of the station wagon or defendant's driver's license. The name on the title to the station wagon was Jema Ramirez.

STATE v. McCLENDON

[350 N.C. 630 (1999)]

Following the questioning, Trooper Lisenby radioed Sergeant Cardwell and gave him the information about defendant. Cardwell told Lisenby to issue defendant a warning ticket for speeding and following too closely. Trooper Lisenby did so, then asked defendant if he had weapons or narcotics in the vehicle. Defendant sighed deeply, chuckled nervously, looked down, and finally muttered "No." Trooper Lisenby asked defendant for permission to search his vehicle which defendant refused to give. Lisenby then left the patrol car and gave this information to Sergeant Cardwell, who got in the patrol car and continued to question defendant. Sergeant Cardwell testified that defendant was sweating and that his breathing was rapid. When asked by Cardwell, defendant again refused to give permission to search his vehicle.

Sergeant Cardwell called the High Point Police Department to secure a drug detecting dog. The dog was permitted to examine the exterior of the station wagon to detect any odor of controlled substances and "alerted" toward the rear of the vehicle. The dog was then placed inside the vehicle and alerted the officers to the rear cargo floor where the spare tire is usually stored. Sergeant Cardwell searched there and found marijuana. Defendant was advised of his rights and signed a *Miranda* rights form. From the time defendant was issued a warning citation until the time the canine unit arrived, approximately fifteen to twenty minutes had elapsed.

In affirming the trial court's denial of defendant's motion to suppress, the majority in the Court of Appeals concluded that Sergeant Cardwell had probable cause to stop defendant's vehicle and that the questioning of defendant by Trooper Lisenby did not exceed the permissible scope of the traffic stop. The Court of Appeals further concluded that, "based on the totality of the circumstances here, the detention of the defendant beyond the issuance of the warning ticket was justified and that no violation of defendant's constitutional rights occurred." *State v. McClendon*, 130 N.C. App. 368, 378, 502 S.E.2d 902, 908 (1998). The dissent in the Court of Appeals contended that because reasonable suspicion that criminal activity was afoot did not exist, the officers were not justified in detaining defendant for further questioning after he was given the warning citation. For the reasons that follow, we affirm the decision of the majority in the Court of Appeals.

[1] As a preliminary matter, we address the question of whether the rule set out in *Whren v. United States*, 517 U.S. 806, 135 L. Ed. 2d 89

(1996), is also required by the North Carolina Constitution. In *Whren*, the United States Supreme Court held that the temporary detention of a motorist upon probable cause to believe that he has violated a traffic law is not inconsistent with the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist for the violation. *Id.* This decision established that police action related to probable cause should be judged in objective terms, not subjective terms. Provided objective circumstances justify the action taken, any "ulterior motive" of the officer is immaterial. As the Court of Appeals stated below, *Whren* conclusively established that the inquiry is no longer what a reasonable officer *would* do but what a reasonable officer *could* do, and in effect put an end to issues involving whether the existence of probable cause for a traffic stop has been used by officers as a pretext for stopping defendant for other reasons. *McClendon*, 130 N.C. App. at 374, 502 S.E.2d at 906.

Defendant first contends that Article I, Section 20 of the North Carolina Constitution affords broader protection to citizens than the Fourth Amendment, and therefore, the *Whren* rule should not be applied. As we said in *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984),

the language of Article [I], Section 20 of the Constitution of North Carolina differs markedly from the language of the Fourth Amendment to the Constitution of the United States. . . .

Whether rights guaranteed by the Constitution of North Carolina have been provided and the proper tests to be used in resolving such issues are questions which can only be answered with finality by this Court.

*Id.* at 643, 319 S.E.2d at 260. Furthermore, we are "not bound by opinions of the Supreme Court of the United States construing even identical provisions in the Constitution of the United States." *Id.* at 642, 319 S.E.2d at 260.

However, we find the reasoning of the Supreme Court in *Whren* to be compelling, and we adopt it here. Moreover, this Court has previously recognized the principle that, in general, police action related to probable cause should be judged in objective terms, not subjective terms. *See State v. Peck*, 305 N.C. 734, 741, 291 S.E.2d 637, 641-42 (1982) ("The officer's subjective opinion is not material. . . . The search or seizure is valid when the objective facts known to the offi-

cer meet the standard required."). Therefore, for situations arising under our state Constitution, we hold that an objective standard, rather than a subjective standard, must be applied to determine the reasonableness of police action related to probable cause.

[2] Defendant contends that the stop of his vehicle for the stated purpose of a speeding violation was a mere pretext for investigating him for the possession of illegal drugs. Defendant argues that such a pretextual traffic stop by Sergeant Cardwell violated his rights under the North Carolina Constitution. However, the officer's subjective motive for the stop is immaterial. The facts found by the trial court from the evidence presented at the suppression hearing established conclusively that Sergeant Cardwell had probable cause to stop the station wagon driven by defendant, as well as the minivan driven by Contreras. Both vehicles were exceeding the posted speed limit, in violation of N.C.G.S. § 20-141, and defendant's vehicle was also following too closely, which is a violation of N.C.G.S. § 20-152. Because of the violations of these traffic laws, the officers had probable cause to stop the vehicles and to issue a warning ticket to each driver. *See* N.C.G.S. § 15A-302(b) (1997); N.C.G.S. § 20-183(b) (Supp. 1998). We therefore conclude that the officers in this case were justified in stopping defendant's vehicle.

[3] Having established that the initial stop of defendant's vehicle and the temporary detention of defendant were proper, we next address the question of whether the further detention of defendant from the time the warning ticket was issued until the time the canine unit arrived went beyond the scope of the stop and was unreasonable. As we have stated previously, Article I, Section 20 of our North Carolina Constitution, like the Fourth Amendment, protects against *unreasonable* searches and seizures. *Garner*, 331 N.C. at 506, 417 S.E.2d at 510. In order to further detain a person after lawfully stopping him, an officer must have reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot. *See Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309 (1990) ("[T]he 'totality of the circumstances—the whole picture[—]' . . . must be taken into account when evaluating whether there is reasonable suspicion.") (quoting *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981)); *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (whether a basis for reasonable suspicion exists is to be determined from the totality of the circumstances). After a lawful stop, an officer may ask the detainee questions in order to obtain information confirming or dispelling the officer's suspicions.

*See Berkemer v. McCarty*, 468 U.S. 420, 82 L. Ed. 2d 317 (1984); *State v. Jones*, 96 N.C. App. 389, 386 S.E.2d 217 (1989), *appeal dismissed and disc. rev. denied*, 326 N.C. 366, 389 S.E.2d 809 (1990). Here, Trooper Lisenby lawfully stopped defendant and asked for his driver's license and registration. Defendant could not find the registration, and instead produced the title to the car. The title, however, was in the name of Jema Ramirez, instead of defendant's name. Trooper Lisenby was entitled to inquire further regarding the ownership of the car to determine whether it was stolen. It was defendant's responses to questions asked during such inquiry that aroused Lisenby's, and later Sergeant Cardwell's, suspicions that criminal activity was afoot.

Upon reviewing the evidence and the trial court's findings, we find several factors that gave rise to reasonable suspicion under the totality of the circumstances. First, when asked who owned the car, defendant said his girlfriend, but would not give Trooper Lisenby her name. It was only after defendant had been asked several times that he said his girlfriend "Anna" owned the car. When Trooper Lisenby inquired "Anna?" defendant said "I think so." However, "Anna" was not the name listed on the title as the owner of the car. Second, although defendant seemed unsure of who owned the car, the address of the owner listed on the title and the address on defendant's driver's license were the same, which would seem to indicate that they both lived in the same residence. Third, defendant was extremely nervous, sweating, breathing rapidly, sighing heavily, and chuckling nervously in response to questions. He also refused to make eye contact when answering questions. We conclude that these facts, when viewed in the totality of the circumstances, allowed the officers to form a reasonable suspicion that criminal activity was afoot. *See State v. Butler*, 331 N.C. 227, 415 S.E.2d 719 (1992) (nervousness was a factor considered in determining that grounds existed for forming a reasonable suspicion).

The dissent in the Court of Appeals found this Court's decision in *State v. Pearson*, 348 N.C. 272, 498 S.E.2d 599 (1998), controlling, stating that "evidence similar to that in the case at hand was insufficient to support a conclusion that the officers were justified in detaining the drivers." *McClendon*, 130 N.C. App. at 379, 502 S.E.2d at 909 (Wynn, J., dissenting). We recognize that *Pearson* could be so construed. Therefore, we revisit *Pearson* now in order to clarify its meaning and to illustrate how the totality of the circumstances in that case are distinguishable from those in the case *sub judice*.

In *Pearson,* there was no conflict concerning the validity of the search of the defendant's vehicle—the defendant gave his valid consent to that search. We declined, however, to extend this consent to include consent to a search of the defendant's person. We concluded that the officer did not have the requisite reasonable suspicion needed for the search of the defendant's person. *Pearson,* 348 N.C. at 276-77, 498 S.E.2d at 601.

In *Pearson,* the defendant was driving below the posted speed limit and drifting back and forth within his lane. The officer stopped the defendant in order to determine if he was impaired. When the officer walked up to the car, the defendant appeared nervous. Although the officer noticed a faint odor of alcohol, he determined that the defendant was just tired, not impaired. While in the officer's car, the defendant told the officer that he had gotten little sleep the night before, as he and his girlfriend had been visiting her parents, who lived near the Virginia border. When the officer questioned the defendant's girlfriend, however, she said they had been visiting the defendant's parents near New Jersey. Although there was no sign of any weapons or drugs in the defendant's car, the officer asked him to sign a consent form allowing a search of the car. The defendant did so, whereupon the officer searched the car and found nothing. The defendant was then told that standard procedure required that he be searched as well. That search of the defendant's person revealed small bags of marijuana hidden in his crotch area. This Court found that the conflicting stories of the defendant and his girlfriend and the apparent nervousness of the defendant were not enough to support a reasonable suspicion that criminal activity was afoot.

Defendant stresses the fact that in *Pearson,* we said that "[t]he nervousness of the defendant is not significant. Many people become nervous when stopped by a state trooper." *Id.* at 276, 498 S.E.2d at 601. Although the quoted language from *Pearson* is couched in rather absolute terms, we did not mean to imply there that nervousness can never be significant in determining whether an officer could form a reasonable suspicion that criminal activity is afoot. Nervousness, like all other facts, must be taken in light of the totality of the circumstances. It is true that many people do become nervous when stopped by an officer of the law. Nevertheless, nervousness is an appropriate factor to consider when determining whether a basis for a reasonable suspicion exists. *See Butler,* 331 N.C. 227, 415 S.E.2d 719; *see also United States v. Perez,* 37 F.3d 510, 514 (9th Cir. 1994) (nervousness and sweating profusely were among the factors giving rise to reason-

able suspicion); *United States v. Nikzad*, 739 F.2d 1431, 1433 (9th Cir. 1984) (fact that defendant was nervous and failed to make eye contact gave rise to reasonable suspicion).

In *Pearson*, the nervousness of the defendant was not remarkable. Even when taken together with the inconsistencies in the statements of the defendant and his girlfriend, it did not support a reasonable suspicion. In the case before us, however, defendant exhibited more than ordinary nervousness; defendant was fidgety and breathing rapidly, sweat had formed on his forehead, he would sigh deeply, and he would not make eye contact with the officer. This, taken in the context of the totality of the circumstances found to exist by the trial court, gave rise to a reasonable suspicion that criminal activity was afoot.

[4] Having determined that Sergeant Cardwell did have the requisite reasonable suspicion needed to detain defendant further, we turn to examine whether the duration of that detention was reasonable. As we noted previously, the time that elapsed between the issuance of the warning ticket and the arrival of the canine unit was only fifteen to twenty minutes. We conclude that this was not unreasonable under the circumstances. The officers acted quickly and diligently to obtain the canine unit, and upon its arrival, they promptly put the drug detection dog to work. *See United States v. Sharpe*, 470 U.S. 675, 688, 84 L. Ed. 2d 605, 617 (1985) ("We reject the contention that a 20-minute stop is unreasonable when the police have acted diligently . . . ."). The Court of Appeals was correct in affirming the trial court's denial of defendant's motion to suppress.

For the reasons stated herein, we affirm the decision of the Court of Appeals.

AFFIRMED.