STATE OF NORTH CAROLINA v. CARLOS ROZELES HERNANDEZ, AKA ADAM GUSMAN, AKA CARLOS R. HERNANDEZ, A/K/A CARLOS ROZALAS HERNANDEZ, DEFENDANT

No. COA10-178

(Filed 21 December 2010)

## 1. Search and Seizure— Fourth Amendment—detention following traffic stop

The question of whether there was a reasonable suspicion of criminal activity sufficient to justify a further period of detention after a traffic stop was not reached where neither the driver nor the passengers had identification, so that a citation could not be issued, and the issues arising from the initial traffic stop could not be quickly resolved.

## 2. Constitutional Law— violation of New Jersey Constitution —no suppression in North Carolina

There was no basis for suppression of evidence due to a violation of the New Jersey Constitution (assumed and not decided) in the detention of defendant after a traffic stop in New Jersey

following a crime in North Carolina. The suppression of evidence in North Carolina is authorized only when required by the constitutions of the United States or North Carolina or when the evidence was the result of a substantial violation of Chapter 15A of the North Carolina General Statutes.

**3. Appeal and Error— findings not challenged below—not reviewed on appeal**

The Court of Appeals declined to review the trial court's findings about the reasons for defendant's detention after a traffic stop where defendant did not challenge the findings at trial but challenged the findings on appeal on the grounds of weight and credibility.

Appeal by Defendant from judgments entered 13 and 19 May 2009 by Judge James M. Webb in Rockingham County Superior Court. Heard in the Court of Appeals 30 August 2010.

*Attorney General Roy Cooper, by W. Wallace Finlator, Jr., Assistant Attorney General, for the State.*

*Greene & Wilson, P.A., by Thomas Reston Wilson, for Defendant-Appellant.*

ERVIN, Judge.

Defendant Carlos Hernandez[1] appeals from judgments entered based upon his convictions for assault with a deadly weapon with intent to kill inflicting serious injury, attempted first degree murder, and armed robbery. On appeal, Defendant challenges the trial court's decision to deny his motions to suppress evidence seized during a 3 January 2007 search of a pickup truck in which he was riding in New Jersey. After careful consideration of Defendant's challenges to the trial court's decision in light of the record and the applicable law, we find no error in the proceedings leading to the entry of the trial court's judgments.

I. Factual Background

A. Substantive Facts

On 28 December 2006, Rosa Rodriguez Dominguez and her husband, Santiago Mungary, owned and operated a store in Reidsville,

---

1. Although Defendant is referred to in the transcript and record documents as Carlos Hernandez, the record reflects that he told law enforcement officers that his name was Adan Guzman-Navarro.

North Carolina, at which they sold, among other things, 14 carat gold jewelry. On the evening of 28 December 2006, four Hispanic men entered the store. After coming into the store, one of them threatened the couple with a pistol. As two of the men held Ms. Rodriguez, she heard her husband struggling with the others and then heard a gunshot. At that point, the other men threatened to shoot Ms. Rodriguez, after which she heard another loud noise and experienced a "very hard hit" to her head. Ms. Rodriguez passed out on the floor, awoke just as the men were leaving, called 911, and reported that her husband, who was severely and permanently disabled by a gunshot wound, had been injured. Subsequently, Ms. Rodriguez discovered that all the jewelry had been stolen from the display case. At trial, Ms. Rodriguez identified Defendant as one of the perpetrators of the robbery.

At approximately 8:00 p.m. on 3 January 2007, New Jersey State Police Trooper Deverron Ramcheran was on patrol on I-295 South, about seventy miles south of New York City and 40 miles north of Philadelphia. Trooper Ramcheran stopped a 1978 pickup truck after observing that it had followed another vehicle too closely and had been making erratic lane changes. According to Trooper Ramcheran, four Hispanic men occupied the truck, with the driver, Jose Arturo Reyes Ocampo, Defendant, and Josue Rodriguez sitting in the front seat and a man named Israel Manuel concealed under a blanket in the truck's bed. At the time that Trooper Ramcheran spoke with the four men, he noted that (1) none of them had a drivers license or other identification; (2) they gave inconsistent descriptions of their itinerary; (3) some of the men stated that the group was driving into various boroughs of New York despite the fact that they were more than an hour's drive from New York and heading south when Trooper Ramcheran stopped them; (4) the driver had "unusual tattoos on his hands" that Trooper Ramcheran associated with criminal gang membership; (5) despite the fact that one or more of the men claimed to be traveling from North Carolina to New York, none of them appeared to have sufficient luggage for such a long trip; and (6) the driver exhibited a nervous and evasive demeanor. As Trooper Ramcheran talked with the occupants of the vehicle, several other officers arrived.

After speaking with the occupants of the truck for about fifteen minutes and while acting consistently with his observations and New Jersey state law, Trooper Ramcheran telephoned his supervisor in order to ask permission to seek the driver's consent to search the truck. Trooper Ramcheran's supervisor authorized him to seek con-

sent to search the truck on the condition that he utilize a Spanish language consent form. Since he did not have a Spanish language consent form in his patrol vehicle, Trooper Ramcheran radioed other officers and requested that one be brought to him.

After another trooper arrived with a Spanish language consent form, Trooper Ramcheran sought and obtained the driver's consent to search the truck. In the course of his search, Trooper Ramcheran found a loaded .380 caliber firearm in the bed of the truck. At that point, Trooper Ramcheran directed the other officers to handcuff all four men. During a subsequent search of Defendant's person, investigating officers found various items of incriminating evidence, including a woman's wallet and jewelry. In addition, two other firearms, including one associated with the Reidsville robbery, and an assortment of jewelry to which price tags were still affixed, were seized from the pickup truck after the discovery of the .380 caliber firearm. The occupants of the truck were arrested for unlawfully possessing firearms and transported to the New Jersey State Police barracks for further processing.

On 10 January 2007, Special Agents Brian Norman and Duane Deaver of the State Bureau of Investigation traveled to New Jersey, where they interviewed Defendant. During the interview, Special Agent Norman posed questions in English, after which Special Agent Deaver would translate the questions into Spanish for Defendant's benefit. After Defendant answered Special Agent Norman's questions in Spanish, Special Agent Deaver provided an English translation of what Defendant said. During the course of this interview, Defendant made an incriminating statement admitting his participation in the 28 December 2006 robbery.

### B. Procedural History

On 5 January 2007, a warrant for arrest was issued charging Defendant with assaulting Mr. Mungaray with a deadly weapon with intent to kill inflicting serious injury and with robbing Mr. Mungaray with a dangerous weapon. On 5 February 2007, the Rockingham County Grand Jury returned bills of indictment charging Defendant with assaulting Mr. Mungaray with a deadly weapon with intent to kill inflicting serious injury, robbing Mr. Mungaray with a dangerous weapon, and the attempted first degree murder of Mr. Mungaray. On 11 December 2007, Defendant waived extradition to North Carolina.

STATE v. HERNANDEZ

[208 N.C. App. 591 (2010)]

On 6 March 2009, Defendant filed a motion to "suppress all evidence obtained as a result of the Defendant's arrest on January 3, 2007, including any statements made to law enforcement officials and the use of any physical evidence seized from the Defendant's person as fruits of an illegal arrest and detention of the Defendant." According to Defendant's suppression motion, although the discovery of a handgun in the truck justified a "pat down" of Defendant, the officers lacked probable cause to search him; the officers lacked probable cause to arrest him for unlawful possession of a firearm; and Trooper Ramcheran had no basis for forming "a reasonable and articulable suspicion that any criminal activity occurring in connection with the Ford pickup truck was related to the Defendant." On 16 March 2009, Defendant filed an addendum to his suppression motion in which he asserted that the search of the truck violated the provisions of the New Jersey Constitution as outlined in *State v. Elder*, 192 N.J. 224, 927 A.2d 1250 (2007). On 4 May 2009, Defendant filed a third suppression motion in which he incorporated his earlier allegations and asserted that the driver of the truck "did not knowingly and freely consent" to the search of the truck; that Defendant had "standing to contest the search of the vehicle;" and that he was effectively in custody as soon as he was "removed from the vehicle and·. . . required to sit on the grass beside the vehicle."

On 4 May 2009, the trial court began conducting a hearing concerning Defendant's suppression motions. After the presentation of evidence and arguments of counsel, the trial court entered an order on 6 May 2009 denying Defendant's suppression motion on the basis of oral findings of fact and conclusions of law.[2] After the denial of Defendant's suppression motions, the charges against Defendant came on for trial before the trial court and a jury. On 13 May 2009, the jury returned verdicts finding Defendant guilty of attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and robbery with a dangerous weapon. After determining that Defendant had one prior record point and should be sentenced as a Level II offender, the trial court entered judgments sentencing Defendant to a minimum term of 100 months and a maximum term of 129 months imprisonment in the custody of the North Carolina Department of Correction for assault with a deadly weapon with intent to kill inflicting serious injury; to a concurrent term of a minimum of 77 months and a maximum of 102 months imprisonment

---

2. The record does not contain a separate written order denying Defendant's suppression motions.

STATE v. HERNANDEZ

[208 N.C. App. 591 (2010)]

in the custody of the North Carolina Department of Correction for robbery with a dangerous weapon;[3] and to a consecutive term of a minimum of 151 months and a maximum of 191 months imprisonment in the custody of the North Carolina Department of Correction for attempted first degree murder. Defendant noted an appeal to this Court from the trial court's judgments.

## II. Legal Analysis

### A. Introduction

[1] Defendant's sole challenge to the trial court's judgments is his contention that the trial court erred by denying his pretrial motions to suppress evidence, including incriminating statements, obtained as a result of the stop of the truck in which Defendant was riding. In his brief, Defendant argues that his detention by law enforcement officers violated the provisions of the United States and North Carolina Constitutions prohibiting unreasonable searches and seizures on the grounds that, while Trooper Ramcheran had a valid basis for stopping the truck, the resulting investigative procedures were "unconstitutionally prolonged." We cannot agree with Defendant's contention.

### B. Standard of Review

"Our review of a denial of a motion to suppress by the trial court is 'limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Barden*, 356 N.C. 316, 340, 572 S.E.2d 108, 125 (2002), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074, 123 S. Ct. 2087 (2003) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). "[T]he trial court's findings of fact are binding when supported by competent evidence, while conclusions of law are 'fully reviewable' by the appellate court." *State v. Icard*, 363 N.C. 303, 308, 677 S.E.2d 822, 826 (2009) (quoting *State v. Brooks*, 337 N.C. 132, 141, 446 S.E.2d 579, 585 (1994)).

> [If a] defendant does not assign error to any of the trial court's findings of fact[,] . . . "they are deemed to be supported by competent evidence and are binding on appeal." We thus review the trial court's order only to determine whether the findings of fact support the [court's] legal conclusion[s.]

---

3. The trial court initially ordered that Defendant's felonious assault and robbery with a dangerous weapon sentences be served consecutively, but subsequently amended the judgments to provide that these two sentences be served concurrently.

*State v. Hudgins,* 195 N.C. App. 430, 432, 672 S.E.2d 717, 718 (2009) (quoting *State v. Roberson,* 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36, *disc. review denied,* 358 N.C. 240, 594 S.E.2d 199 (2004)). On appeal, Defendant has not challenged the sufficiency of the evidence supporting any of the trial court's findings of fact. As a result, "[b]ecause defendant does not challenge the factual findings in the order, we need only determine whether the trial court's ultimate conclusion, denying defendant's motion to suppress, was supported by the findings of fact." *State v. Milien,* 144 N.C. App. 335, 339, 548 S.E.2d 768, 771 (2001).

### C. Standing

"The Fourth Amendment protects individuals 'against unreasonable searches and seizures.' The North Carolina Constitution provides similar protection. N.C. Const. art. I, § 20." *State v. Barnard,* 362 N.C. 244, 246, 658 S.E.2d 643, 645, *cert. denied,* U.S. , 172 L. Ed. 2d 198, 129 S. Ct. 264 (2008) (quoting U.S. Const., amend. IV). "When a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment. . . . [A] passenger is seized as well and so may challenge the constitutionality of the stop." *Brendlin v. California,* 551 U.S. 249, 251, 168 L. Ed. 2d 132, 136, 127 S. Ct. 2400, 2403 (2007)). As a result, given that he was a passenger in the truck at the time that it was stopped by Trooper Ramcheran, Defendant has standing to challenge the constitutionality of Trooper Ramcheran's seizure and detention of the driver and passengers, including any improper prolongation of that investigatory detention. *State v. Jackson,* —— N.C. App. ——, ——, 681 S.E.2d 492, 496 (2009) (stating that a passenger may challenge a "detention beyond the scope of the initial seizure").

### D. Lawfulness of the Extension of Defendant's Detention

### 1. Relevant Legal Principles

" '[R]easonable suspicion is the necessary standard for traffic stops.' " *State v. Maready,* 362 N.C. 614, 618, 669 S.E.2d 564, 567 (2008) (quoting *State v. Styles,* 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008)).

Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Only "some minimal level of objective justification" is required. This Court has determined that the reasonable suspicion standard requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences

from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." Moreover, "[a] court must consider 'the totality of the circumstances' . . . in determining whether a reasonable suspicion" exists.

*Barnard*, 362 N.C. at 247, 658 S.E.2d at 645 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576, 120 S. Ct. 673, 675-76 (2000), *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989), and *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968)). An officer's "observation of [a] defendant's traffic violation [gives] him the required reasonable suspicion to stop [the] defendant's vehicle." *Styles*, 362 N.C. at 417, 665 S.E.2d at 441; *see also, e.g., State v. McClendon*, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999) (holding that a law enforcement officer had the authority to stop a car after observing it exceed the speed limit). "[T[he officer's subjective motive for the stop is immaterial." *McClendon*, 350 N.C. at 636, 517 S.E.2d at 132. On the other hand, "once it is determined that the initial stop was justified at its inception by a reasonable suspicion of criminal activity, it must further be determined whether the subsequent detention of the defendant following the stop is 'reasonably related in scope to the circumstances which justified the interference in the first place.' " *Milien*, 144 N.C. App. at 340, 548 S.E.2d at 772 (quoting *United States v. Sharpe*, 470 U.S. 675, 682, 84 L. Ed. 2d 605, 613, 105 S. Ct. 1568, 1573 (1985)). As a result, after "the original purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further delay." *State v. Falana*, 129 N.C. App. 813, 816, 501 S.E.2d 358, 360 (1998) (citing *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880). Assuming that "[a] law enforcement officer who observes a traffic law violation has probable cause to detain the motorist, . . . the scope of that detention may be expanded where the officer has a reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." *State v. Hernandez*, 170 N.C. App. 299, 301, 612 S.E.2d 420, 422 (2005) (citing *McClendon*, 350 N.C. at 636, 517 S.E.2d at 132, and *State v. Hamilton*, 125 N.C. App. 396, 399-400, 481 S.E.2d 98, 100, *disc. review denied*, 345 N.C. 757, 485 S.E.2d 302 (1997)).

## 2. Nature of Defendant's Challenge to Trial Court's Ruling

Although Defendant does not dispute the constitutional validity of Trooper Ramcheran's decision to stop the truck in which he was

riding, he does contend that his "detention was unconstitutionally prolonged" because Trooper Ramcheran lacked the articulable reasonable suspicion necessary to support his detention after the passage of a reasonable period of time following the initial stop. At bottom, Defendant's arguments focus on the interval between the initial stop of the truck and the time at which a Spanish language consent form reached the scene of the investigatory detention. According to Defendant, "[a] Spanish consent to search form did not arrive for approximately an hour" after Trooper Ramcheran stopped the truck, so that he "detained [the occupants of the vehicle] for over approximately an hour, all for purposes of getting Mr. Ocampo's consent to search the Ford." In light of Defendant's references to the delay that resulted from Trooper Ramcheran's efforts to obtain a Spanish language consent form and the fact that Defendant has not identified any other interval underlying his challenge to the trial court's decision, we conclude that the issue Defendant seeks to raise on appeal is the constitutionality of his detention from the time of the initial stop until the time at which Trooper Ramcheran obtained the driver's consent to search the truck.

### 3. Analysis of Defendant's Contentions

The time of various incidents relating to the investigatory detention in question can be determined by examining a videotape of the stop made by the New Jersey State Police. According to the videotape:

7:56 p.m.:     Trooper Ramcheran stopped the truck on the basis of moving violations.

8:15 p.m.:     Trooper Ramcheran called his supervisor to discuss the inconsistent stories given by the occupants of the truck and the fact that they lacked identification.

8:18 p.m.:     Trooper Ramcheran's supervisor directed him to check the truck's license against a relevant database.

8:20 p.m.:     Trooper Ramcheran called the necessary information in to personnel with access to the database.

8:30 p.m.:     Trooper Ramcheran reports to his supervisor concerning the information that he received in response to his query.

8:38 p.m.:     Trooper Ramcheran's supervisor instructs him to obtain a Spanish language consent form before seeking the driver's consent to search the truck.

8:40 p.m.:	Trooper Ramcheran broadcasts a call for a Spanish language consent form on his State Police radio.

9:00 p.m.:	Another trooper arrives at the scene of the investigatory detention with a Spanish language consent form.

9:08 p.m.:	After reviewing the form with the driver and requesting his consent to search the truck, Trooper Ramcheran receives permission to conduct the proposed search.

As a result, the time period that must be considered in evaluating the merits of Defendant's challenge to the trial court's order is approximately one hour and ten minutes.

In challenging the length of his detention, Defendant "relies primarily on *State v. Myles*, [188 N.C. App. 42, 45, 654 S.E.2d 752, 755, *aff'd* 362 N.C. 344, 661 S.E.2d 732 (2008)] and *State v. Falana*, [129 N.C. App. at 816, 501 S.E.2d at 360]" and argues that they demonstrate the "limited ability of law enforcement [to] prolong[] a stop based [o]n a hunch that lacks articulation." A review of the decisions upon which Defendant relies establishes that they are readily distinguishable from and do not control the outcome of the present case.

In *Falana*, the defendant, who had been stopped for a traffic violation, produced a valid drivers' license and registration. In addition, the investigating officer determined that the defendant was not impaired at the time of the stop. As a result, this Court held that further detention of the defendant was unlawful given the absence of facts tending to show the existence of a reasonable suspicion of criminal activity. Similarly, in *Myles*, after stopping the defendant for a traffic violation, the investigating officer determined that he was not impaired, had a valid license, and was not the subject of any outstanding warrants. After noting that the investigating officer "considered the traffic stop 'completed' because he had 'completed all [his] enforcement action of the traffic stop,' " we held that, "in order to justify [] further detention of defendant, [the officer] must have had defendant's consent or 'grounds which provide a reasonable and articulable suspicion in order to justify further delay.' " *Myles*, 188 N.C. App. at 45, 654 S.E.2d at 755 (quoting *Falana*, 129 N.C. App. at 816, 501 S.E.2d at 360). Thus, both *Myles* and *Falana* involve situations in which the driver and passengers were detained after the original purpose of the initial investigative detention had been addressed

and in which the investigating officer attempted to justify an additional period of detention solely on the basis of the driver's nervousness or uncertainty about travel details, a basis which we held did not suffice to provide a reasonable suspicion that criminal activity was afoot.

In this case, on the other hand, Trooper Ramcheran was unable to quickly complete the initial investigative detention because all four occupants of the truck denied having any identification. In response to questions posed by Defendant's trial counsel about the reason that he did not simply issue a citation to the driver of the vehicle and let the occupants of the truck proceed on their way, Trooper Ramcheran testified:

> [DEFENSE COUNSEL]: . . . But had you . . . written the citation . . ., they would then have been free to leave.

> [TROOPER RAMCHERAN]: . . . [I]t would have been impossible because no one in the vehicle had an identification, not even the driver. . . . [T]he fact that the driver had no identification for me to be able to issue him a citation steps it up to a whole different level[.]

> [DEFENSE COUNSEL]: You could have issued him the citation and he [could have] walked away.

> [TROOPER RAMCHERAN]: Well, sir, there would be no way for me to . . . identify him[.] . . . [U]nder New Jersey law, I have to be able to identify who he is in order to issue him a citation.

> [DEFENSE COUNSEL]: So you write the citation and hand it to him[?]

> [TROOPER RAMCHERAN]: I couldn't just write a citation for John Doe. . . .

Thus, since neither the driver nor any of the passengers had a driver's license or other form of identification in their possession, Trooper Ramcheran could not quickly resolve the issues arising from the initial traffic stop. Defendant conceded as much at the hearing, telling the trial court that Trooper Ramcheran "stopped [the driver] for a traffic citation" but that "the citations were not written at all until . . . some hours later." As a result of the fact that the independent justification requirement set out in *Falana* does not come into play until "the original purpose of the stop has been addressed" and given that the undisputed evidence in this case establishes that the challenged

delay occurred when Trooper Ramcheran was attempting to address issues arising from the initial stop, we need not reach the question of whether Trooper Ramcheran had a reasonable suspicion of criminal activity sufficient to justify a further period of detention after citing the driver.

Defendant has not argued that the methods employed by the investigating officers during the traffic stop violated his constitutional rights. According to the United States Supreme Court, "[a]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325-26 (1983) (citations omitted). In this case, after all four men denied having any identification, Trooper Ramcheran's supervisor directed him to check the vehicle's license plate with the State Police Regional Operation Intelligence Center and the El Paso Intelligence Center in an effort to obtain additional information about the vehicle and its occupants. On appeal, Defendant does not challenge the reasonableness of running the truck's license through the indicated database as a method of seeking information or argue that the length of time to complete the computer search was unreasonably dilatory. In addition, Defendant does not argue that the fifteen or twenty minutes it took another trooper to drive to the traffic stop with a Spanish language consent form consumed an unreasonable length of time. However, out of an abundance of caution and in light of the lengthy sentence imposed upon the Defendant, we have reviewed the record and conclude that the available evidence demonstrates that the investigating officer had a reasonable suspicion that criminal activity was afoot sufficient to justify detention of Defendant pending further investigation.

The trial court found, among other things, that (1) the driver told Trooper Ramcheran that he did not have a driver's license or vehicle registration; (2) a man in the truck bed was "covered with a blanket"; (3) Trooper Ramcheran saw Defendant hand the driver a North Carolina driver's license belonging to Defendant's brother; (4) when Trooper Ramcheran asked each occupant of the vehicle where they had come from and where they were going, they gave inconsistent answers; (5) Trooper Ramcheran found the information provided by the occupants of the vehicle to be "confusing and inconsistent" since the truck was more than 70 miles from New York City and heading

south when it was stopped despite the fact that certain of the occupants claimed to be headed for the Bronx, Brooklyn, or Manhattan; (6) none of the occupants of the vehicle produced identification documents or a driver's license; (7) the men had only a few gym bags and no luggage despite the fact that at least one of the occupants claimed that the group was traveling from North Carolina to New York; and (8) Trooper Ramcheran observed that the driver had tattoos on both hands, a decorative pattern that was associated with criminal gang activity. In *State v. Sanders*, 112 N.C. App. 477, 481, 435 S.E.2d 842, 845 (1993), this Court held that a law enforcement officer "could reasonably have concluded that defendant was involved in criminal activity" where the "defendant informed [the officer] that he was carrying no identification, did not own the vehicle, and could provide no registration for the car" and the officer "testified that people who are driving stolen cars often provide officers with false names and insist that they have no identification." Thus, assuming that Trooper Ramcheran was required to have a reasonable articulable suspicion that criminal activity was afoot in order to justify detaining Defendant during the slightly more than one hour period between the initial traffic stop and the driver's decision to consent to a search of the truck, we conclude that the surrounding circumstances demonstrated the existence of such a reasonable articulable suspicion.

We have considered, and ultimately rejected, Defendant's other challenges to the trial court's order. Although Defendant argues that the trial court "failed to make any findings of fact or conclusions of law that directly address the issue of whether the duration of the detention was reasonable," we do not believe that it was necessary for the trial court to make findings and conclusions with respect to that issue. As we have already noted, the only basis on which Defendant challenges the duration of the stop is his assertion that Trooper Ramcheran lacked reasonable suspicion to support his detention, a contention that we have already rejected. In addition, an inquiry into the lawfulness of an officer's decision to extend a traffic stop beyond the time needed to check the driver's license and registration and issue a citation only becomes necessary after the officer finishes addressing the issues that stemmed from the initial traffic stop. Although the videotape of the investigatory detention at issue in this case reveals that over an hour elapsed between the time that Trooper Ramcheran stopped the truck and the time at which he discovered a firearm in the truck, the investigating officers were engaged in trying to obtain information about the driver, the truck,

and the passengers throughout this entire period of time. Thus, given that the trial court's ruling must be upheld on other grounds, we need not examine the adequacy of the trial court's findings and conclusions addressing the length of time during which Defendant was detained.

In addition, Defendant argues that the trial court failed to make findings of fact and conclusions of law concerning the extent, if any, to which he was "free to leave" while awaiting the arrival of a Spanish language consent form. However, the State has not argued that Defendant was free to leave, so there is no real dispute about the fact that Defendant was in detention throughout the entire period of time at issue here. As a result, given that the extent to which Defendant was "free to leave" was never in dispute before the trial court, the trial court was not required to make findings of fact and conclusions of law addressing this issue.[4]

[2] Next, Defendant argues that Trooper Ramcheran's decision to ask for consent to search the truck violated the principle of New Jersey state constitutional law enunciated in *State v. Elder*, 192 N.J. 224, 927 A.2d 1250 (2007). N.C. Gen. Stat. § 15A-974 only authorizes the suppression of evidence in the event that "[i]ts exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina" or the evidence was "obtained as a result of a substantial violation of the provisions of" Chapter 15A of the North Carolina General Statutes. As should be obvious, any violation of the principle of New Jersey state constitutional law enunciated in *Elder* would not involve a violation of Chapter 15A of the North Carolina General Statutes. Assuming, without in any way deciding, that Trooper Ramcheran's actions violated the New Jersey Constitution, any such "illegality under . . . state [law] can neither add to nor subtract from its validity" under the federal or North Carolina Constitutions since a "[m]ere violation of a state statute [or constitutional provision] does not infringe the federal Constitution." *Snowden v. Hughes*, 321 U.S. 1, 11, 88 L. Ed. 497, 504, 64 S. Ct. 397, 402 (1944). Thus, this argument provides no basis for the suppression of evidence in a North Carolina court.

4. Defendant has not argued that Trooper Ramcheran was required to have probable cause to support his continued detention or that Trooper Ramcheran lacked any probable cause necessary to support any search and seizure activities that he conducted. As a result, given the fact that "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant," *Viar v. N.C. Dept. of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005), we will not reach or address this issue.

[3] Finally, Defendant contends that the decision to detain him was based on the driver's demeanor and on the fact that the occupants provided inconsistent stories about their itineraries. Defendant argues that a "close review" of the videotaped traffic stop reveals that the occupants were confused by the officer's questions and that their statements were "actually . . . consistent." For that reason, Defendant appears to invite us to revisit the trial court's factual determinations on weight and credibility grounds. As discussed above, the trial court's unchallenged findings of fact are conclusively established for purposes of appellate review. In addition, the trial court's factual findings are supported by competent evidence and show that the investigating officers detained the occupants of the truck for a number of reasons in addition to those cited by Defendant. Therefore, we do not find Defendant's final argument persuasive.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court did not err by denying Defendant's suppression motions. As a result, given that Defendant's challenge to the trial court's denial of his suppression motions was the only basis upon which he challenged his convictions and sentences, we hold that Defendant received a fair trial that was free from prejudicial error and that the trial court's judgments should remain undisturbed.

NO ERROR.

Chief Judge MARTIN and Judge STROUD concur.