**STATE v. PHIFER**

[226 N.C. App. 359 (2013)]

STATE OF NORTH CAROLINA

v.

FAWN QUEONEZ PHIFER

No. COA12-1124

Filed 2 April 2013

**Search and Seizure—reasonable suspicion—nervous pacing— insufficient to justify detention**

> The trial court erred in a possession of a firearm by a felon case by denying defendant's motion to suppress. The fact that defendant was moving around and appeared nervous after he had been temporarily detained by an officer and warned about impeding the flow of traffic was not sufficient to justify his continued detention and search.

Appeal by defendant from judgment entered 10 May 2012 by Judge Larry G. Ford in Rowan County Superior Court. Heard in the Court of Appeals 27 February 2013.

*Leslie C. Rawls for defendant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General J. Allen Jernigan, for the State.*

ELMORE, Judge.

Fawn Quenez Phifer (defendant) appeals from a judgment entered upon a guilty plea of possession of a firearm by a felon and habitual felon status, sentencing him 70 to 96 months imprisonment. Prior to entering his guilty plea, defendant unsuccessfully moved to suppress evidence of a firearm found on his person. Defendant preserved the right to appeal the suppression ruling prior to his guilty plea. After careful consideration, we conclude that defendant's motion to suppress should have been granted. We therefore reverse the trial court's denial of the suppression motion and vacate the judgments entered upon defendant's guilty plea.

## I. Background

Around 2:00 P.M. on 16 January 2011, Officer Wesley Lane of the Salisbury Police Department was driving his patrol car on East Cemetery

**STATE v. PHIFER**

[226 N.C. App. 359 (2013)]

Street when he observed two men walking in the road around the 500 block. That portion of the road was known as a high crime area with shootings, drug complaints, drug transactions, and fights. There had also been numerous complaints of people walking down the middle of the road and not moving for oncoming traffic. Officer Lane approached the men, and asked them to stand in front of his patrol car. One of the men complied with Officer Lane's command; the other man, who was later identified as defendant, did not. Rather, defendant kept moving around, and he asked Officer Lane the reason for the stop. Officer Lane explained that a city ordinance and state law mandated that a person may not walk in the street or impede traffic. Defendant kept moving back and forth and refused to stand still. According to Officer Lane, defendant appeared "hyper" and was "pacing" nervously. Officer Lane told both men that he was going to give them a warning and check for outstanding warrants, of which he found none. Officer Lane then informed both men that he was going to frisk them for weapons. He asked defendant if he had any weapons on him, and defendant replied "yes, but it's not mine." Officer Lane then asked defendant to put his hands on the hood of the car, handcuffed him, and patted him down. Officer Lane found a firearm in defendant's pocket, and he placed defendant under arrest.

On 16 January 2011, defendant was indicted with possession of a firearm by a felon and of habitual felon status. On 8 May 2012, defendant filed a motion to suppress evidence relating to the firearm found on his possession. In that motion, defendant argued that "[t]he seizure of defendant upon the public street . . . was an investigatory stop not justified by reasonable suspicion and based upon objective facts that [he] was involved in criminal activity" and thus violated his constitutional rights.

On 10 May 2012, the trial court entered an order denying defendant's motion. In that order, the trial court concluded that "the stop and arrest were legitimate" because defendant violated G.S. 20-174.1, a statute which prohibits a person from standing in the street in such as a manner as to impede the regular flow of traffic. Defendant then pled guilty, preserving his right to appeal the trial court's order denying his motion to suppress. Defendant was then sentenced to 70-96 months imprisonment, and he now appeals both the 10 May 2012 order and the judgment entered upon his guilty plea.

## II. Analysis

Having preserved his right to challenge the suppression ruling, defendant now presents three arguments on appeal. He argues 1) that the trial court erred in denying his motion to suppress, 2) that the trial

court erred in its interpretation of N.C. Gen. Stat. § 20-174.1, and 3) that the trial court's order denying his suppress motion was insufficient. We agree that the trial court erred when it denied defendant's motion to suppress, thus we will not address the remaining issues.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

Here, defendant sought to suppress evidence relating to a firearm discovered on his person following a frisk by Officer Lane. Police limitations on the search of a person without a warrant in limited circumstances were first articulated in *Terry v. Ohio*:

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself . . . to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons . . . and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

392 U.S. 1, 30-31, 20 L. Ed. 2d 889, 911 (1968). Since *Terry*, our Supreme Court has elaborated that in North Carolina, "[a]n officer has reasonable suspicion if a reasonable, cautious officer, guided by his experience and training, would believe that criminal activity is afoot based on specific and articulable facts, as well as the rational inferences from those facts." *State v. Williams*, __ N.C. __, __, 726 S.E.2d 161, 167 (2012) (internal quotations and citations omitted).

Here, the trial court's findings of fact establish that Officer Lane stopped defendant "to warn [him] about impeding the flow of traffic[.]" After issuing this warning, Officer Lane "wanted to frisk the defendant because of his suspicious behavior." That suspicious behavior was being that defendant "appeared to be nervous and kept moving back and

forth." Defendant argues that the fact that he was moving around and appeared "nervous" was "not legally significant or sufficient to justify his continued detention and search." We agree.

In *State v. Pearson*, our Supreme Court held that a nonconsensual search of the person is not justified by the mere presence of "nervous and excited" behavior around police. 348 N.C. 272, 275, 498 S.E.2d 599, 600 (1998). In *Pearson*, not only was the suspect nervous, but he also made inconsistent statements to police when questioned and had an odor of alcohol on his breath. *Id.* at 276, 498 S.E.2d at 600. Regardless, our Supreme Court nonetheless held that the officers lacked reasonable articulable suspicion that the defendant was armed and dangerous. *Id.* at 276-77, 298 S.E.2d at 600-01.

In *State v. McClendon*, our Supreme Court clarified that "[n]ervousness, like all other facts, must be taken in light of the totality of the circumstances." 350 N.C. 630, 638, 517 S.E.2d 128, 134 (1999). In that case, the suspect was so nervous that he "exhibited more than ordinary nervousness; [he] was fidgety and breathing rapidly, sweat had formed on his forehead, he would sigh deeply, and he would not make eye contact with the officer." *Id.* Our Supreme Court held that his nervousness combined with other factors, like his inability to state the owner of the vehicle in which he was driving, gave the officers reasonable suspicion to search him. *Id.* at 637, 517 S.E.2d at 133. In applying *McClendon*, this Court has held that while extreme nervousness can be a factor considered by police in examining the totality of the circumstances, nervous behavior alone is not sufficient to establish reasonable suspicion. *See, e.g., State v. Myles*, 188 N.C. App. 42, 50, 654 S.E.2d 752, 757-58, *aff'd*, 362 N.C. 344, 661 S.E.2d 732 (2008) ("Although our Supreme Court previously has stated nervousness can be a factor in determining whether reasonable suspicion exists, our Supreme Court has never said nervousness alone is sufficient to determine whether reasonable suspicion exists when looking at the totality of the circumstances.").

Turning to the order at issue here, the findings of fact make no mention of any factors in addition to defendant's nervousness which might have given rise to reasonable suspicion for the search. In fact, the findings indicate that "this was not a drug interdiction stop," "[t]here is no evidence of any drug buy," defendant was "merely walking down the street," "no traffic was actually impeded by" defendant, and defendant was "very cooperative and did not offer any resistance" to Officer Lane. Therefore, we agree with defendant that the nervous pacing of a suspect, temporarily detained by an officer to warn him not to walk in the street,

is insufficient to warrant further detention and search. Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress. As such, we vacate the judgment and reverse the order.

Vacated and reversed.

Judges BRYANT and ERVIN concur.